THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALAN LLOYD, Defendant-Appellant.

Second District    No. 79-506

Opinion filed January 27, 1981.

Mary Robinson and Marilyn Martin, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert Morrow, State's Attorney, of Geneva (Phyllis J. Perko and Marshall Stevens, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, Alan Lloyd, entered a nonnegotiated plea of guilty to a charge of indecent liberties with a three-year-old child (Ill. Rev. Stat. 1979, ch. 38, par. 11—4(a)(3)), and requested the court to grant him a sentence of probation. The trial court sentenced him to a term of six years in the Department of Corrections. Defendant moved to vacate his guilty plea, but the court denied his motion. Defendant now appeals the sentence, asserting that the sentence was not supported by the record and that the denial of probation was in contravention of legislatively mandated sentencing criteria.

On September 16, 1978 defendant was baby sitting for a number of children including the victim. He testified at the sentencing hearing that he had three beers. He further testified that he undressed the victim and attempted to have intercourse with her. He related that he did not succeed in having intercourse with her, but that he licked her vagina and climaxed on her body.

At the sentencing hearing, the trial court had access to various psychiatric reports. One report indicated that defendant demonstrated no active features of a formal mental disease. It reported, however, that

defendant demonstrated "features of underdeveloped cognitive social and occupational skills, underdeveloped impulse control and an inadequate personality." It also noted that defendant was a minimum-to-moderate risk of repeating a sexual crime. The psychiatrist advised the court to seriously consider strict probation with constructive rehabilitation and psychological counseling.

Another report indicated that defendant's personality style was such that he was very superficial in his relationships. It further reported that defendant felt no guilt or anxiety about his situation because psychologically he defended himself against it by denying even the possibility that it had happened.

The court also had access to the presentence report, which indicated that defendant had a ninth-grade education, and that he had consistent employment, although by a number of different employers. Finally, it indicated that the defendant had an alcohol abuse problem and that he suffered from a lack of adequate impulse control. It suggested that defendant could benefit from a federally funded sex offender program. It recommended that if defendant was placed on probation that he apply as an outpatient at the Isaac Ray Center Sex Offender Program and that if he was incarcerated that he be placed in the sex offender program at Menard State Correctional Facility. Defendant was also interviewed by a psychologist at the Isaac Ray Center. The center's staff concluded that defendant would probably respond to treatment and was an appropriate candidate for the center. Defendant was also analyzed by the Kane County Diagnostic Center, which reported that defendant was apparently functioning with an external, immature and primitive thought process and had significant feelings of inadequacy and insecurity. The report continued, stating that defendant's condition probably resulted in his making inappropriate and inaccurate judgments regarding his environment. Because of these difficulties, the report stated that defendant appeared to be extremely deficient in developing personally meaningful and socially acceptable interpersonal relationships and might be likely to direct his feelings toward inappropriate and nonthreatening individuals. The report concluded that defendant's "humble, shy, overly polite presenting self may not be sufficient to deaden his high affective state, and these overt measures of control might break down, resulting in episodic losses of impulse control."

Finally, defendant's uncle testified at the sentencing hearing stating that he and his wife would house defendant during his probation term and that they would provide defendant transportation to the sex offender program. Defendant also testified at the sentencing hearing and stated that he would adhere to the terms of the probation. He also related to the court that he was sexually assaulted while in the Kane County jail.

The State did not offer any evidence in aggravation at the sentencing hearing. The court noted, however, that defendant inflicted or attempted to inflict serious injury to another person, although admittedly not bodily injury. It also found as a factor in aggravation that the sentence was necessary to deter others from committing the same crime. The court noted that defendant had no prior criminal record. It indicated, however, that it felt that the presumption favoring probation had been overcome in that there was no indication that defendant could mentally or physically comply with the terms of probation and that he seemed to be of inadequate personality. The court was also concerned that the psychiatrist could not assure the court that defendant could be cured. Finally, the court stated that probation was improper because defendant's imprisonment was necessary for the protection of society, and that probation would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice. The court then sentenced defendant to six years' imprisonment. Defendant moved to withdraw his guilty plea and vacate the judgment or, in the alternative, to reduce his sentence. The court denied the motion and defendant filed a timely notice of appeal.

One of defendant's alternate requests is that we reduce the sentence of six years to a term of probation. He argues that the court's imposition of a six-year sentence was erroneous and that the presumption of sentence correctness was rebutted by the fact that the court considered the emotional harm caused to the victim when no evidence was introduced on that issue, and that the court's sole reason for sentencing defendant to a term in prison was to deter others from committing the same crime.

■■ We first consider what the proper standard of sentence review is. As interpreted by *People v. Choate* (1979), 71 Ill. App. 3d 267 and as followed in *People v. Cox* (1979), 77 Ill. App. 3d 59, *rev'd* (1980), 82 Ill. 2d 268, the legislature in enacting section 5—5—4.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—4.1) intended to modify the standard of review of sentencing from the "abuse of discretion" standard of *People v. Perruquet* (1977), 68 Ill. 2d 149, to one of a "rebuttable presumption" of sentence correctness, and intended to authorize a court of review to reduce a sentence from imprisonment to one of probation. However, *Cox* was reversed on appeal to the supreme court (82 Ill. 2d 268), and the court there found that the statute was in direct conflict with the decisions of the courts which interpreted the scope of Supreme Court Rule 615(b)(4). (Ill. Rev. Stat. 1979, ch. 110A, par. 615(b)(4).) The court declared section 5—5—4.1 to be null and void, and reaffirmed its decision in *Perruquet*, which held that absent an abuse of discretion by the trial court, a sentence may not be altered upon review. (*Perruquet*, at 154.) As a consequence of the court's decision, *People v. Bolyard* (1975), 61 Ill. 2d 583, is controlling authority for the finding that

Rule 615 does not authorize a reviewing court to reduce a sentence of imprisonment to one of probation. (Accord, *People v. Rege* (1976), 64 Ill. 2d 473.) Additionally, in *People v. Kuesis* (1980), 83 Ill. 2d 402, the court held that whenever the record shows the statutory requirements of section 5—6—1 (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—1) (requiring a court prior to sentencing a defendant to a term in prison to find that imprisonment is necessary for the protection of the public or that probation would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice) have been complied with or substantially complied with, even though not specifically stated thusly, then a reviewing court may alter the sentencing judge's disposition only upon a finding of an abuse of discretion in that a sentence was excessive.

In the case at bar, the record supports the court's opinion that imprisonment was necessary to protect the public and that probation would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice. Although probation is the preferred disposition whenever possible, the granting of probation is within the trial court's discretionary power and it may deny probation where the evidence comports with the findings required to be made. Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—1(a)(1) and (2); *People v. Oelschlager* (1980), 85 Ill. App. 3d 695.

In the case at bar, there was evidence defendant suffered from an inadequate personality. The psychiatric and presentence reports suggested that defendant might benefit more from probation with counseling or from participation in a sex offender program than from incarceration. The Isaac Ray Center Sex Offender Program's staff concluded that the defendant would likely succeed in the program. The court, in response to this suggestion, stated that there was no sound indication that defendant could mentally or physically comply with the terms of probation in that he seemed to be of inadequate personality. The court further indicated that the psychiatrists offered "no sure cure of defendant's problem."

Defendant asserts that his family testified that they would house defendant, and provide him with transportation to the sex offender program. Defendant testified that he would faithfully adhere to the terms of probation. Defendant argues that his propensity for being a good candidate for probation together with his past unblemished record, his youthful age and his employment history supported a more substantial reason for imposing a strict probation sentence than incarceration. In *People v. Knowles* (1979), 70 Ill. App. 3d 30, 33-34, the court stated:

> "When a defendant poses no threat to society and when, as the presentence report indicates here, adequate resources are available in the community to provide any needed rehabilitation, to place a

youthful offender in a penitentiary where bitterness and anger breed is not even tangentially related to the ends of justice."

The case at bar is highly distinguishable from *Knowles*. The defendant here had an alcohol problem and a psychological problem which appeared to inhibit any confidence the court had that defendant was physically and mentally able to adhere to the terms of probation. The defendant stated in one of the psychiatrist's reports that he felt that he was being framed by the victim's mother. It was reported there that the defendant was incapable of feeling guilt or anxiety about his situation because psychologically he defended against it by denying it happened or even possibly happened.

■■ ■ In setting a sentence, a court owes a duty not only to the accused but the public as well. (*People v. Bravieri* (1974), 22 Ill. App. 3d 845, 848.) We believe the court properly considered that the diagnostic reports indicated that the defendant posed a sufficient risk to the public as a whole so as not to be a suitable prospect for probation. The defendant asserts that the court erred in failing to consider the defendant's allegation that he was sexually assaulted while incarcerated in the Kane County jail and that this was a violation of section 5—5—3.1(a)(12) of the Unified Code of Corrections. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.1(a)(12).) The fact the defendant refused to testify against his alleged attackers and his own description of his health as "good" during the sentencing hearing cast considerable doubt on the credibility of his self-serving allegation regarding the sexual assault. We do not equate having a "humble, shy and overly polite" character with being susceptible to sexual attacks, nor do we believe that such a personality is the type of "medical condition" sought to be protected from endangering by incarceration under the provisions of section 5—5—3.1(a)(12). We do not believe that the court abused its discretion in not finding the defendant was likely to comply with the terms of probation and that imprisonment would endanger the defendant's medical condition. In sum, we believe that the statutory preference for a term of probation was overcome by facts in this case which were properly considered by the trial court. Accordingly, we need only determine whether the court abused its discretion in sentencing defendant to a term of six years. *People v. Cox* (1980), 82 Ill. 2d 268; *People v. Kuesis* (1980), 83 Ill. 2d 402.

This court, pursuant to Supreme Court Rule 615 (Ill. Rev. Stat. 1979, ch. 110A, par. 615), has the authority to reduce the punishment imposed by the trial court when it finds that the trial court abused its discretion in imposing it. (*People v. Perruquet* (1977), 68 Ill. 2d 149.) Defendant asserts that the trial court abused its discretion because it considered as a factor in aggravation the harm to the victim, where the existence or extent of the

harm to the victim was not shown. The court noted that it had no input from the victim, but nevertheless found that defendant caused or attempted to cause serious harm to her, although perhaps not bodily harm. Defendant concludes the court's finding was improper because there was no evidence in the record supporting that finding. See *People v. Hammock* (1979), 68 Ill. App. 3d 34.

We believe the record of this case raises a reasonable inference that the young victim suffered emotional injury as a result of the incident. (See *People v. Matthews* (1979), 69 Ill. App. 3d 65, 68.) The defendant confessed to attempting to have intercourse with a three-year-old and licking her vagina and climaxing on her body. At the sentencing hearing, the defense counsel admitted that the mother was taking the child to a counselor. Obviously, the child must also have experienced some degree of physical irritation and discomfort, since the child's mother was first alerted by the fact of her daughter rubbing herself in the vaginal area.

In sentencing, the court must consider the nature of the offense. (*People v. Perkins* (1976), 40 Ill. App. 3d 933.) Although the State did not present evidence in aggravation, the Unifiorm Code of Corrections does not preclude the court from considering factors in aggravation when the State does not present any. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2; *cf. People v. Pavone* (1975), 31 Ill. App. 3d 1013, 1015.) Moreover, section 5—5—3.2(a)(1) provides that the mere threat of serious harm should be considered by the court as a factor in aggravation. (See also *People v. Perkins* (1976), 40 Ill. App. 3d 933.) Accordingly, we conclude the court did not abuse its discretion in considering the harm to the young victim.

■■ The court indicated that this particular case was not a minimum case. (*People v. Matthews* (1979), 69 Ill. App. 3d 65, 67.) It observed that the victim was of tender years. Defendant cites *People v. Watts* (1974), 19 Ill. App. 3d 733, which held that a young man, with no prior criminal record, who had been steadily employed although by a variety of employers should not have been sentenced over the minimum number of years for indecent liberties. The case at bar differs from *Watts* on two points. Here, the victim was three years old, while in *Watts* the victim was 14 years old. Secondly, the defendant in the case at bar was suffering from an inadequate personality, and one psychiatrist reported that there was a minimum to moderate chance that he would repeat the act. We believe that these reasons were sufficient for the difference in sentences between defendant in the case at bar and the defendant in *Watts*. Moreover, defendant's sentence is consistent with other similar cases. In *People v. Murphy* (1978), 72 Ill. 2d 421, the court affirmed the defendant's 12- to 70-year sentence for indecent liberties with a six-year-old. Although defendant in the *Murphy* case was mentally retarded, we believe that the court there gave particular attention to the age of the victim. Defendant's

contention that the court considered as the single factor in aggravation the need to deter others is without merit. Although such consideration standing alone is not a proper reason for denying probation (*People v. Huffman* (1979), 78 Ill. App. 3d 525; *People v. Knowles* (1979), 70 Ill. App. 3d 30), we believe the court properly considered the youth of the victim and the harm done to her as other factors in aggravation, and that the higher-than-minimum sentence imposed was not an arbitrary or capricious application of judicial discretion.

■■ Although the facts of this case may have led us to impose a different sentence, an appellate court will not substitute its judgment for that of the trial court merely because it might have imposed a different sentence. (*People v. Tedder* (1980), 83 Ill. App. 3d 874.) A sentence should be reduced only if it is at great variance with the purposes and spirit of the law. (*People v. Sprinkle* (1974), 56 Ill. 2d 257, 264.) Our review of the record causes us to conclude no abuse of discretion occurred in the imposition of the six-year sentence for the instant offense.

The judgment of the circuit court of Kane County is affirmed.

Judgment affirmed.

REINHARD and VAN DEUSEN, JJ., concur.