THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROLAND E. DANIELS, SR., Defendant-Appellant.

Second District   No. 81—697

Opinion filed March 21, 1983.—Rehearing denied April 27, 1983.

Mary Robinson, of Palatine, for appellant.

Robert J. Morrow, State's Attorney, of Geneva (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE VAN DEUSEN delivered the opinion of the court:

Defendant, Roland Daniels, appeals his conviction for the offense of felony theft (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(a)) and his sentence of 18 months of periodic imprisonment, a fine of $6,900, and restitution in the amount of $2,100.

Defendant was indicted for felony theft (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(a)) "in that he knowingly exerted unauthorized control over property of Louis J. Stein, property being a 1978 Cadillac Seville, True VIN #6S69B8Q468916, False VIN #6S69B8Q468116 having a total value in excess of $150.00, intending to deprive Louis J. Stein permanently of the use of the property."

At the trial on these charges on July 6, 1981, Louis J. Stein testified that he purchased a 1978 dark grey Cadillac Seville bearing the VIN #6S69B8Q468916 on December 31, 1977; that it was missing from in front of his Evanston home on the morning of February 16, 1978, after he had parked it the previous evening; that he never gave anyone permission to drive or keep the car; and that he never saw the car again and signed title over to his insurance company pursuant to a claim settlement.

A special agent for the Illinois Department of Law Enforcement testified that he examined a 1978 silver-grey Cadillac Seville in the possession of the Indiana State Police in July 1980 and found it to have an altered public VIN number glued into the dashboard holder. Specifically, the third-to-last digit in the metal plate, originally a numeral 9, had been rendered flat and a numeral 1 had been die-stamped in its place, though slightly out of line with the other numbers so that it read 6S69B8Q468116. All the other VIN numbers were unaltered and read 6S69B8Q468916. Documents and testimony established that the Illinois Secretary of State's office had no record of an Illinois title issued for a 1978 Cadillac bearing the serial number 6S69B8Q468116 and that an Illinois title had been issued in 1978 for a 1978 Cadillac bearing the serial number 6S69B8Q468916, but it had not been licensed in 1978, 1979 or 1980 and a salvage certificate was issued for it in February 1979.

Documents and testimony established that defendant licensed a 1978 Cadillac Seville with the altered VIN number on February 16,

1978, and licensed it in 1979 and 1980; that such car was added to defendant's automobile insurance policy by telephone request on February 17, 1978; and that defendant or Kathleen Kelly, with whom defendant lived, brought the car into an Aurora dealership for repairs six times between July 1978 and July 1979. The court reporter who transcribed defendant's grand jury testimony read portions of that testimony in which defendant described his purchase of a 1978 Cadillac for $7,500, when he was living in Aurora in 1978. He later moved to Woodridge, and neighbors there testified that defendant had and drove a 1978 silver or grey Cadillac during summer 1979 and for about one year and that both defendant and Kelly drove the automobile during that time.

After hearing arguments of counsel, the court found defendant guilty. His post-trial motion was filed August 5, 1981, and alleged *inter alia* that the evidence was insufficient to support the conviction. It was denied on August 14, 1981, immediately prior to sentencing.

The presentence report included defendant's bachelor's degree and nine-year employment with the Department of Corrections and his resignation as Chief of Advocacy Services upon conviction for this offense. Individuals who worked with him praised his work. The report also noted his 1958 narcotics conviction and 10- to 12-year penitentiary sentence as well as his 1971 gambling conviction and $25 fine. The report detailed his assets and liabilities. It also stated that Stein had paid a $100 deductible, according to the terms of the insurance policy on the car, and that his wife lost about $2,000 worth of merchandise that she was taking to her store in Wisconsin because the merchandise was in the car at the time it was stolen.

At the sentencing hearing, defense counsel tendered seven letters in support of a request for probation. After hearing arguments of both sides, the court imposed a sentence of periodic imprisonment for 18 months, with three separate two-week periods (the first two weeks, another two weeks after one year, and the last two weeks of the sentence) to be served in the Kane County Correction Center. Defendant was also ordered to pay costs of $70, a fine of $6,900, and restitution in the amount of $2,100, which was to include payment to Stein's wife for the lost merchandise.

■ Defendant first argues on appeal that he was not proved guilty of felony theft beyond a reasonable doubt for three reasons: (1) the State failed to prove defendant possessed the particular automobile described in the charging instrument, (2) the State failed to prove defendant exerted control over the victim's automobile in Kane County, and (3) the State failed to prove defendant possessed the vic-

tim's automobile with the requisite criminal intent. While it is true that proof of these matters was mainly circumstantial, a conviction may be sustained upon circumstantial as well as direct evidence. (*People v. Bernette* (1964), 30 Ill. 2d 359, 367.) In this first issue, defendant has critically examined each discrete item of circumstantial evidence, pointed out its flaws and diminished its weight, and he has drawn the conclusion that the evidence was, therefore, insufficient for conviction. We disagree.

■ In *People v. Kilgore* (1975), 33 Ill. App. 3d 557, this court concluded that the evidence in that case was sufficient to prove defendant guilty of the offenses of felony theft and possession of a motor vehicle with a falsified identification number (Ill. Rev. Stat. 1973, ch. 38, par. 16—1(a)(1); ch. 95½, par. 4—103(b)), stating:

> "In order to warrant a conviction based on the circumstances of a defendant's recent exclusive and unexplained possession of a stolen vehicle or a vehicle with falsified identification numbers the evidence must be of 'such a conclusive nature as to lead, on the whole, to a satisfactory conclusion, and such as to produce, in effect, a moral certainty that the accused, and no one else, committed the crime, and it must be such that the circumstances proved cannot, upon any reasonable theory, be true and the defendant innocent.' (*People v. Hooper*, 364 Ill. 320, 325 (1936). See also *People v. Burton*, 6 Ill. App. 3d 879, 890-91 (1972).) It is not necessary, however, that circumstantial evidence exclude every possibility of the defendant's innocence or produce absolute certainty in the mind of the trier of the facts. (*People v. Smith*, 107 Ill. App. 2d 267, 270 (1969).)" (33 Ill. App. 3d 557, 560.)

The trier of fact need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances relied upon to establish guilt, but it is sufficient if all the evidence, taken together, satisfies the factfinder of the accused's guilt. *People v. Marino* (1970), 44 Ill. 2d 562, 580; *People v. Bernette* (1964), 30 Ill. 2d 359, 367.

The requirement that defendant's guilt be proved beyond a reasonable doubt does not mean that the factfinder must disregard the inferences that flow normally from the evidence before it. Here the inferences from the evidence pointed toward defendant's guilt. (*People v. Russell* (1959), 17 Ill. 2d 328, 331.) While the circumstantial evidence relied upon must not give rise to any reasonable hypotheses under which the defendant could be innocent of the crime charged, that does not mean that the trier of fact is required to search out a series of potential explanations compatible with innocence and elevate them

to the status of a reasonable doubt. *People v. Huff* (1963), 29 Ill. 2d 315, 320.

With these principles in mind, we examine defendant's three bases for his contention that he was not proved guilty beyond a reasonable doubt.

(1) Sufficiency of proof that defendant possessed the particular automobile described in the charging instrument.

■ While evidence putting defendant in possession of a car described only by make and model is insufficient (*e.g., People v. Stone* (1979), 75 Ill. App. 3d 571), the vehicle in this case was identified by VIN number as Stein's. (Compare *People v. Hope* (1979), 69 Ill. App. 3d 375.) A vehicle bearing the altered VIN number of the stolen car was added to defendant's insurance coverage within a few days after the theft and deleted in October 1979, which indicated that defendant did not possess it after that date, including the June 1980 date of the car's recovery in Indiana. Defendant licensed an automobile with the altered VIN number a day after the theft, even though no automobile title for that VIN number ever existed. Defendant appears to argue that the certified documents showed an alteration of the critical digit and implies that the alteration may have occurred after the certification. However, defendant made no objection or inquiry at trial to any alterations in the State's title record certifications, objecting solely on other grounds which were denied, and, contrary to defendant's argument, these documents have persuasive probative value. Repair records from a local Cadillac dealership indicated that defendant or Kathleen Kelly brought the automobile in for repair several times and paid for such repair, sometimes by check. The confusion in VIN numbers on repair bills was in all probability caused by the alteration of the windshield public VIN plate while the public VIN number in the door was unaltered. Moreover, the notation of both the altered and unaltered VIN numbers contradicts defendant's argument that no evidence was adduced showing when the windshield VIN plate was altered and shows, in fact, that the public VIN plate was in an altered state while defendant possessed the car. As defendant points out, the lack of evidence of personal knowledge of the maker of the insurance and automobile repair records that defendant was responsible for those documents affects the weight to be accorded them, but they are admissible evidence. 87 Ill. 2d R. 236; Ill. Rev. Stat. 1979, ch. 38, par. 115—5.

■ Defendant's basic point is that the only car connected with him was the one he admitted to the grand jury that he purchased for

$7,500 in March 1978 from a private party whose name defendant could not recall and, as attested to by his neighbors, he drove openly; that this was perfectly legitimate conduct; and that the State's evidence was inadequate to prove the *corpus delicti* of the offense. While defendant's handwriting on the critical documents was not proved by exemplars, which the State could have taken (87 Ill. 2d R. 413(a)(viii)), it is highly improbable that some other third person would apply for license and insurance coverage and order and pay for repairs on the stolen car especially by check, all in defendant's name, and use defendant's two home addresses over a period of 1½ years. The circumstantial evidence sufficiently established that the car defendant possessed was the same vehicle stolen from Louis Stein.

    (2) Sufficiency of proof that defendant exerted control over the victim's automobile in Kane County.

Defendant asserts that the State showed, at best, that he lived at a Kane County address at the time he purchased and licensed the car but that it cannot be inferred that he physically possessed the car at his residence or otherwise exerted control over the stolen car in that county necessary to sustain a conviction in a Kane County prosecution. (See Ill. Rev. Stat. 1979, ch. 38, par. 1—6(g); *People v. Choura* (1980), 84 Ill. App. 3d 228.) As the State persuasively argues, evidence in this case was not limited to his place of residence, but the evidence also showed that defendant and Kathleen Kelly had repairs done to the car while they lived in Kane County, that the odometer showed increased mileage each time and that they openly used the car at their next residence, which was in Du Page County. Such evidence would support an inference of use in Kane County. Also, the car dealership to which defendant and Kathleen Kelly brought the car for repairs was located at 2500 N. Farnsworth in Aurora, and this court may take judicial notice that this location is within the boundaries of Kane County (see *People v. Luigs* (1981), 96 Ill. App. 3d 700, 702-03), indicating use in Kane County.

    A charge that a crime was committed in a particular county is a material averment that must be proved beyond a reasonable doubt to sustain a conviction, although it may be proved by circumstantial evidence. (*People v. Clark* (1979), 71 Ill. App. 3d 381, 396.) The circumstantial evidence at trial is sufficient to establish that defendant exerted control over the stolen car in Kane County. Therefore, his conviction need not be reversed for failure to prove venue.

    (3) Sufficiency of proof that defendant possessed the victim's car with the requisite criminal intent.

Defendant maintains that the State failed to prove that he pos-

sessed the stolen car with the requisite intent to permanently deprive the owner of its use or benefit. (See *People v. Mertens* (1979), 77 Ill. App. 3d 791, 794-95.) Basically, he argues that there was absolutely nothing surreptitious about his dealings concerning the car, that no evidence was offered to show that the car was worth more than the $7,500 he paid for it, and that the $9,000 figure notated on the insurance change report was not directly shown to have been provided by defendant and could have reflected the fact that the car was damaged and would be repaired. According to defendant, the State offered no independent evidence to show the circumstances under which defendant came to possess the car and did not preclude the reasonable hypothesis that defendant purchased and operated the car innocently. See *People v. McIntosh* (1977), 48 Ill. App. 3d 694, 700.

It is well established that exclusive possession of recently stolen property creates an inference of guilt which can be rebutted by defendant's explanation. (*E.g., People v. McIntosh* (1977), 48 Ill. App. 3d 694, 700.) A defendant who chooses to explain his possession of stolen property must offer a reasonable story or be judged by its improbabilities. (48 Ill. App. 3d 694, 700; *People v. Kilgore* (1975), 33 Ill. App. 3d 557, 560.) While the defendant's story was not preposterous on its face, there does not appear to be error in the implicit finding of the trier of fact that it was not reasonably believable. See *People v. Ward* (1980), 80 Ill. App. 3d 253.

Defendant here stated that he bought the car in March 1978 from a private party whose name he could not recall. He apparently received no title, and the evidence showed that no title for a car with the altered VIN number was ever issued. The evidence also showed that defendant made license application on the date of the vehicle theft on February 16, 1978, and insured it the next day, thus contradicting his claim that several days passed between the time he saw it and the time he bought it. This case is distinguishable from *People v. Dickerson* (1976), 41 Ill. App. 3d 464, because, in that case, the evidence showed that the defendant came into possession of the property under innocent circumstances, even though he later sought to protect his friend by his initial statement to police, which he subsequently changed.

To summarize, the evidence in this case was sufficient to show defendant's possession of the stolen vehicle with the windshield public VIN plate in an altered condition. The same evidence contradicted defendant's explanation of his possession of the vehicle and established venue. Defendant's position would require acceptance of an unreasonable hypothesis—that someone else, unbeknownst to defendant,

ordered the licenses in defendant's name, ordered the changes in defendant's automobile insurance policy, and ordered and paid for repairs to the vehicle—in order to find the evidence insufficient. A review of the entire record leads to the conclusion that there was sufficient evidence to establish defendant's guilt beyond a reasonable doubt. Therefore, the conviction is affirmed.

Defendant's next issue on appeal is that the term of periodic imprisonment and fine imposed were excessive. Basically, he maintains that the judge misapplied the statutory sentencing criteria in that he based the sentence on deterrence alone and compounded that by failing to find as mitigating the fact that defendant had led a law-abiding life for a substantial period of time before the commission of the offense. The sentence imposed, according to defendant, is antagonistic to rehabilitation because the three two-week periods of incarceration will hamper defendant's efforts to secure new employment and the $6,900 fine invites defendant's financial ruin.

██ It is by now axiomatic that the determination and imposition of a sentence is within the trial court's discretion and will be altered only where the trial judge abused his discretion. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492; *People v. Perruquet* (1977), 68 Ill. 2d 149, 153.) The Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1001—1—1 *et seq.*) gives wide discretion to sentencing judges in order to permit reasoned judgments as to the penalty appropriate to the particular circumstances of each case. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492.) It is true, as defendant maintains, that the judge must fashion a sentence which balances the rehabilitation of the offender and the need to protect society. (88 Ill. 2d 482, 493.) The judge's sentencing determination depends on several factors, and, by presiding over the trial and the sentencing hearing, he is in the best position to make the evaluations and determine the proper sentence. *People v. Perruquet* (1977), 68 Ill. 2d 149, 154.

In the instant case, defendant was convicted of a Class 3 felony; the unenhanced penalty for that offense is a term of incarceration within the range of two to five years. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(6).) He argues that the trial court erred in not imposing a term of probation and goes on to argue that the conditions of periodic imprisonment were unlike the standard imposition of that type of sentence and more like probation so that the judge's stated reason for denying probation, that probation would deprecate the seriousness of the offense, "rings hollow and the court's exercise of discretion in denying probation is rendered highly suspect."

In support, defendant cites *People v. Knowles* (1979), 70 Ill. App.

3d 30, and *People v. Lloyd* (1981), 92 Ill. App. 3d 990, for the proposition that the need to deter others, standing alone, is not a permissible basis for denying probation, and he argues that the trial court, having excluded punishment as the purpose of the sentence, left deterrence as the only purpose for the sentence imposed. However, the trial judge denied probation because he found that, in light of the totality of the case and defendant's history, probation would deprecate the seriousness of the offense and be inconsistent with the ends of justice. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—1(2).) This is in direct contrast to *Knowles*, where the court found sentencing error in that the trial court acknowledged deterrence as the only purpose and the sentence did not reflect "a knowing quest to be consistent with the ends of justice." (70 Ill. App. 3d 30, 35.) In *Lloyd*, the court affirmed the trial court's imposition of a prison term upon a finding that probation was improper because defendant's imprisonment was necessary for the protection of the public and, as here, because probation would deprecate the seriousness of the offender's conduct and be inconsistent with the ends of justice. 92 Ill. App. 3d 990, 993.

*Lloyd* goes on further to cite *People v. Kuesis* (1980), 83 Ill. 2d 402, which in turn cites *People v. Cox* (1980), 82 Ill. 2d 268, for the proposition that, where there has been compliance or even substantial compliance with section 5—6—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—1), a reviewing court may alter the sentencing judge's disposition only upon a finding of an abuse of discretion in that a sentence was excessive. (92 Ill. App. 3d 990, 993-94.) After denying probation, the trial judge here articulated in great detail his rationale for the sentence imposed. He specifically found in mitigation that serious physical harm was not caused, threatened or contemplated but could not say that the conduct was the result of circumstances unlikely to recur. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.1.) In aggravation he specifically found that defendant had a history of prior delinquency or criminal activity and that the sentence was necessary to deter others from committing the same crime. Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2.

■ Although defendant's felony conviction was over 20 years old, such history is a factor to be considered in imposing a sentence of imprisonment; the degree of recency is not limited by the statute and thus is a matter of weight to be accorded this factor. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)(3).) Deterrence is also a valid factor to consider. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)(7).) Insofar as the fine is concerned, it is an authorized disposition in this case (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3(b)(6)), and the record is

clear that its purpose was to reflect the seriousness of the conduct and defendant's ability to pay, although such fine would probably "dent" defendant's lifestyle. Defendant's contention that the trial judge did not consider his law-abiding lifestyle as a mitigating factor is belied by several of the judge's comments, *e.g.*, that he considered the presentence investigation report, evidence and information offered by the parties, and argument and that he read letters from various individuals concerning defendant's employment activities and character. The judge is not obliged to recite, and assign a value to, each fact presented in evidence at the sentencing hearing. *People v. Meeks* (1980), 81 Ill. 2d 524, 534.

Defendant argues in his reply brief that he is not complaining of an alleged failure of the trial judge to consider or articulate evidence or sentencing alternatives but rather that the judge found against defendant on the mitigating factor concerning criminal history and recent lifestyle (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.1(a)(7)), that this finding was erroneous, and that it, therefore, requires reversal (*People v. Conover* (1981), 84 Ill. 2d 400). It should be observed that there is no express finding in the record on this factor, nor does the statute call for one. The statute provides that the trial court may consider in mitigation that defendant either has no prior history of delinquency or criminal activity or that he has led a law-abiding life for a substantial period of time prior to the present crime. In *Conover*, the trial court improperly considered the taking of proceeds as an aggravating factor of compensation for a crime in burglary and theft cases and, because the court could not determine how much weight that factor was accorded, the cases were remanded for resentencing. (84 Ill. 2d 400, 405.) In this case, there is every indication that the trial judge considered defendant's recent lifestyle in mitigation as well as his prior criminal history in aggravation and, unlike *Conover*, both factors were proper to consider.

A sentence imposed by a trial court will not be disturbed unless it clearly appears that the penalty constitutes a great departure from the fundamental law and its spirit and purpose. A sentence which both reflects the seriousness of the offense and the rehabilitative potential of the defendant will be upheld. (*People v. Brown* (1982), 103 Ill. App. 3d 306, 310.) The trial court followed both the letter and spirit of the law and did not abuse its discretion in imposing the sentence in this matter, and it will not be disturbed.

Defendant's final contention is that the trial court erred in ordering $2,000 in restitution paid to the wife of the owner of the stolen automobile for display merchandise owned by her which was in the

car at the time of the theft. Relying on *People v. Pearson* (1982), 108 Ill. App. 3d 241, 244, the State initially responds that this court should not address this issue because defendant failed to object to the order of restitution in the trial court. Defendant's contention, however, unlike the question posed in *People v. Pearson*, raises the issue of the authority or jurisdiction of the court to enter such an order and therefore is not waived by defendant's failure to make a timely objection. *People v. Daugherty* (1982), 104 Ill. App. 3d 89, 92-93.

■ Turning to the merits of defendant's final contention, we find that the trial court was without authority to order $2,000 in restitution paid to Mrs. Stein. Section 5—5—6 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—6) provides that if restitution is ordered as part of the disposition of the case, "the defendant shall make restitution *to the victim* in accordance with" certain requirements set out in the statute. (Emphasis added.) An insurance company that has paid its policyholder for the loss is not "the victim" as that phrase is used in section 5—5—6. (See *People v. Wilson* (1980), 87 Ill. App. 3d 544, 550, *cert. denied* (1981), 451 U.S. 989, 68 L. Ed. 2d 848, 101 S. Ct. 2327.) Neither the residents nor the insurers of a student dormitory damaged by arson are victims as that term is used in the restitution statute where the information charging the arson offense does not allege fire damage to any property other than that owned by the college. (See *People v. Knowles* (1980), 92 Ill. App. 3d 537.) Mrs. Stein is likewise not "the victim" of the offense in this case.

The indictment in this matter charged the defendant with theft of a Cadillac automobile owned by Louis Stein. Defendant was convicted of that offense and no other. The victim of that offense was Louis Stein. Defendant has not been charged or convicted of stealing the property which may have been in the Cadillac when it was stolen. The evidence adduced at trial did not establish that any such goods were taken or that, if any were taken, they belonged to Mrs. Stein and were taken by the defendant. The evidence before the trial court that Mrs. Stein's property was in the car at the time it was stolen by defendant is contained in unsworn hearsay in the presentence report. The trial court incorrectly considered this statement of loss. See *People v. Knowles* (1980), 92 Ill. App. 3d 537, 539-40.

The conditions of restitution may not extend to matters unrelated to the charge before the trial court, nor is it empowered to order restitution for such extraneous matters. (*People v. Mahle* (1974), 57 Ill. 2d 279, 284.) Subsection (a) of section 5—5—6 (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—6(a)) provides for a hearing in which the trial court

determines the amount and conditions of payment of restitution. To extend the meaning of the word "victim" to include others who also claimed to have been damaged by the actions of the defendant in committing the crime charged might well necessitate conducting this hearing as a full-fledged civil suit for damages in the form of restitution for losses that are unrelated to the particular offense for which the defendant offered his defense at trial and for which he stands convicted.

While the loss in question, that of Mrs. Stein's display merchandise, may have been proximately caused by the defendant in the theft of the automobile, any such loss was not incurred by the victim of the auto theft, who was Louis Stein. Subsection (b) of section 5—5—6 (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—6(b)) provides in relevant part that "[r]estitution shall be made in an amount not to exceed the actual out of pocket expenses or loss *to the victim* proximately caused by the conduct of the defendant ***." (Emphasis added.) Therefore, the trial court was without authority to order restitution for a loss not incurred by a victim of the offense charged.

Since Mrs. Stein was not the victim of the offense charged and proven at trial, the trial court was not authorized to include in the order of restitution the sum of $2,000 to Mrs. Stein for the loss of her display merchandise. The amount of restitution to be paid by defendant is therefore modified to $100.

Affirmed as modified.

HOPF and NASH, JJ., concur.