930

*In re* V.L.F. (The People of the State of Illinois, Petitioner-Appellee, v. V.L.F., Respondent-Appellant).

Fourth District   No. 4—88—0060

Opinion filed September 30, 1988.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

The respondent minor, V.L.F., born October 3, 1971, admitted and stipulated to the allegations of a delinquency petition charging him with fleeing or attempting to elude a police officer (Ill. Rev. Stat. 1987, ch. 95½, par. 11—204). He was adjudicated a delinquent and thereafter placed on two years' probation with conditions, including that he make restitution in the amount of $3,025.50 and serve a 30-day period of incarceration in the Macon County jail during the last 30 days of his probation term. The minor appeals, arguing (1) the trial court lacked authority to order him to pay the restitution on a matter unrelated to the charge leading to his adjudication as a delinquent; and (2) the trial court abused its discretion in ordering him to serve a 30-day period of incarceration at the end of his probation term.

The delinquency petition here was filed as a result of a high-speed chase on December 20, 1987. Count I alleged V.L.F. to be a delinquent by reason of having committed aggravated battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—4(b)(6)), i.e., he "knowingly caused bodily harm to Lynn Umbarger in that he struck [the officer] with a motor vehicle." Count II alleged the minor was delinquent by reason of having committed aggravated battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—4(b)(6)), i.e., he "knowingly made physical contact of an insulting or

provoking nature with Lynn Umbarger in that he struck [the officer] with a motor vehicle." Count III alleged V.L.F. to be a delinquent by reason of fleeing or attempting to elude a police officer (Ill. Rev. Stat. 1987, ch. 95½, par. 11—204):

"[R]espondent minor operated a motor vehicle namely: a Chevrolet Monte Carlo after having been given a visual and audible signal by peace officers for the County of Champaign, Illinois directing the respondent minor to bring his vehicle to a stop and willfully failed and refused to obey said direction and increased his speed, extinguished his headlights in an attempt to elude officers of the County of Champaign Sheriff's Department."

At the adjudicatory hearing, the minor admitted and stipulated to count III of the petition, and counts I and II were dismissed. The dispositional report filed with the court on January 5, 1988, provided:

"VICTIM REPORT

In an attempt to determine the [effect] that this offense had on the victims, this officer contacted [the Controller and Business Coordinator] of Miles Chevrolet in Decatur, Illinois and attempted to contact Champaign County Sheriff's Deputy Umbarger. The vehicle (Monte Carlo) the respondent minor was driving, was reported stolen from Miles Chevrolet in Decatur and Champaign County Sheriff's Deputy Umbarger was one of the officers involved in pursing [sic] the minor.

[The Controller and Business Coordinator] reports the 1988 Chevrolet Monte Carlo SS incurred a total of $3,025.50 in damages (This figure includes both internal and external damages). He further reports the vehicle is 100% insured by Motor Insurance Corporation and Miles Chevrolet is required to pay no deductible. [The Controller and Business Coordinator] indicates an insurance claim has been filed *** concerning the vehicle the minor was driving.

Although this officer attempted to contact Deputy Umbarger to verify his condition resulting from his pursuit of the minor, this officer has been incapable of communicating with Deputy Umbarger as of the writing of this report.

To this [officer's] knowledge, Deputy Umbarger incurred no serious injuries as a result of this offense."

The trial judge imposed probation, including as a condition $3,025.50 restitution to be paid during the probationary period, made to either Miles Chevrolet in Decatur or such insurance agent, company, or representative designated by Miles Chevrolet. Although no witnesses tes-

tified in support of the restitution ordered, respondent did not object to this condition of probation.

On appeal, respondent argues the restitution order was beyond the authority of the trial court as it involved a matter unrelated to the charges raised in the delinquency petition, *i.e.*, the allegations of the petition did not charge the respondent with theft of or damage to the car, or with any property offenses in relation to the car, nor did the allegations name Miles Chevrolet or its insurer. Further, such restitution was not argued for or suggested by respondent's counsel, nor was it part of the negotiations for admission to the delinquency petition. See, *e.g.*, Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6(d); see also *In re F.D.* (1980), 89 Ill. App. 3d 223, 229, 411 N.E.2d 1200, 1205.

Respondent relies on statutory provisions on restitution and the supreme court's decision in *People v. Mahle* (1974), 57 Ill. 2d 279, 312 N.E.2d 267.

■ The State argues respondent has waived this issue for purposes of appeal as he failed to object in the trial court, citing *People v. Pearson* (1982), 108 Ill. App. 3d 241, 244, 439 N.E.2d 31, 33, *People v. Kerker* (1984), 121 Ill. App. 3d 1072, 1075, 460 N.E.2d 771, 773, and *People v. Osborn* (1983), 111 Ill. App. 3d 1078, 1084, 444 N.E.2d 1158, 1163. Since the respondent's argument addresses the authority of the trial court to order the restitution, we disagree. (Accord *People v. Daniels* (1983), 113 Ill. App. 3d 523, 535, 447 N.E.2d 508, 516, *appeal denied* (1983), 96 Ill. 2d 543; see also *In re T.E.* (1981), 85 Ill. 2d 326, 332-35, 423 N.E.2d 910, 913-14 (and cases cited therein).) Accordingly, we have considered this argument on the merits.

■ Section 5—3(2)(*l*) of the Juvenile Court Act (Act) (Ill. Rev. Stat. 1985, ch. 37, par. 705—3(2)(*l*)) (under the Juvenile Court Act of 1987, see section 5—24(2)(*l*) (Ill. Rev. Stat. 1987, ch. 37, par. 805—24(2)(*l*))) permits restitution as a condition of juvenile probation, but requires the order to comply with section 5—2(4) of the Act (Ill. Rev. Stat. 1985, ch. 37, par. 705—2(4); under the Juvenile Court Act of 1987, see section 5—23(4) (Ill. Rev. Stat. 1987, ch. 37, par. 805—23(4))). Section 5—2(4) of the Act invokes the provisions of section 5—5—6 of the Unified Code of Corrections (Code) (see Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6), which provides that in fashioning disposition the trial court may determine "whether the defendant should be required to make restitution in cash, for out-of-pocket expenses, damages, losses, or injuries found to have been proximately caused by the conduct of the defendant." (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6(a).) As a general rule, restitution may not be ordered for

matters unrelated to the charges before the court.

The State maintains this principle was not violated by this restitution order since the damage to the car was caused by respondent's conduct in fleeing or attempting to elude police. The State relies on evidence at the detention hearing, including testimony that respondent drove the car at speeds between 75 and 100 miles per hour, got stuck in some mud temporarily after turning off onto a private driveway, and was thereafter apprehended when he became stuck in a field. The State argues section 5—5—6(b) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6(b)) of the Code provides authority for an order of restitution to individuals injured by a respondent's criminal conduct but not named in the charge.

In *Mahle*, on which respondent relies, the defendant pleaded guilty to two informations which charged him with eight counts of deceptive practices and one count of violation of bail bond. There, addressing the restitution condition, the supreme court reasoned:

> "The trial court also required as a condition to the probation that the defendant make restitution in the sum of $1,138.86, plus court costs of $385.40. It appears from the informations in this case that the total monies wrongfully obtained were approximately $387. The balance of the restitution was for other alleged bad checks written by the defendant. *We do not believe that the conditions of restitution may extend to matters unrelated to the charges before the court. The trial court was not empowered to order restitution of sums extraneous to the informations before it.* Section 5—6—3(b)(10) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—3(b)(10)) empowers the court to make as a condition to the probation the 'restitution or reparation in an amount not to exceed actual loss or damage to property and pecuniary loss *** [and to] determine the amount and conditions of payment.' To the extent that the restitution as ordered exceeded the amount that may have been ordered under the statutory authority, the order or condition was erroneous as to the excess. See *People v. Holzapple* (1956), 9 Ill. 2d 22, 25[, 136 N.E.2d 793, 795]." (Emphasis added.) *Mahle*, 57 Ill. 2d at 284, 312 N.E.2d at 271.

Accord *People v. Knowles* (1980), 92 Ill. App. 3d 537, 539-40, 414 N.E.2d 1322, 1325 (Green, J., dissenting) (holding restitution order improper insofar as it included amounts lost by dormitory residents where defendant was charged with damaging university buildings, not students' property); *cf. People v. Jones* (1980), 81 Ill. App. 3d 367, 368, 401 N.E.2d 287, 288 ("Upon revocation or modification of a sen-

tence of probation, the circuit court has only the power to impose a sentence that would have been imposed 'at the time of initial sentencing' ").

In 1977, the legislature added section 5—5—6 to the Code (see Ill. Rev. Stat. 1977, ch. 38, par. 1005—5—6), providing for restitution as an increment of disposition. Section 5—5—6 provided in pertinent part: "Restitution shall be made in an amount not to exceed the actual out of pocket expenses or loss *to the victim proximately caused by the conduct of the defendant* to be payable over a period not to exceed 5 years." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 38, par. 1005—5—6(b).) This provision was considered by the courts in *Daniels, In re J.M.S.* (1981), 92 Ill. App. 3d 1141, 416 N.E.2d 734, and *People v. Flanagan* (1985), 133 Ill. App. 3d 1, 478 N.E.2d 666.

In *Daniels*, the defendant was indicted for felony theft in that he knowingly exerted unauthorized control over a Cadillac Seville belonging to Louis Stein, intending to deprive Stein permanently of the use of the property. In sentencing the defendant, the trial court ordered him to pay $2,000 restitution to Stein's wife for display merchandise owned by her which was in the car at the time of the theft. The *Daniels* court found the trial court was without authority to order this restitution since Mrs. Stein was not the "victim" of the offense of which defendant was convicted, reasoning:

"Defendant has not been charged or convicted of stealing the property which may have been in the Cadillac when it was stolen. The evidence adduced at trial did not establish that any such goods were taken or that, if any were taken, they belonged to Mrs. Stein and were taken by the defendant. The evidence before the trial court that Mrs. Stein's property was in the car at the time it was stolen by defendant is contained in unsworn hearsay in the presentence report. The trial court incorrectly considered this statement of loss. See *People v. Knowles* (1980), 92 Ill. App. 3d 537, 539-40[, 414 N.E.2d 1322].

The conditions of restitution may not extend to matters unrelated to the charge before the trial court, nor is it empowered to order restitution for such extraneous matters. (*People v. Mahle* (1974), 57 Ill. 2d 279, 284[, 312 N.E.2d 267].) Subsection (a) of section 5—5—6 (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—6(a)) provides for a hearing in which the trial court determines the amount and conditions of payment of restitution. To extend the meaning of the word 'victim' to include others who also claimed to have been damaged by the actions of the defendant in committing the crime charged might well necessi-

tate conducting this hearing as a full-fledged civil suit for damages in the form of restitution for losses that are unrelated to the particular offense for which the defendant offered his defense at trial and for which he stands convicted.

*While the loss in question,* that of Mrs. Stein's display merchandise, *may have been proximately caused by the defendant in the theft of the automobile, any such loss was not incurred by the victim of the auto theft,* who was Louis Stein. [Emphasis added.] Subsection (b) of section 5—5—6 (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—6(b)) provides in relevant part that '[r]estitution shall be made in an amount not to exceed the actual out of pocket expenses or loss *to the victim* proximately caused by the conduct of the defendant \*\*\*.' [Emphasis in original.] Therefore, the trial court was without authority to order restitution for a loss not incurred by a victim of the offense charged." *Daniels,* 113 Ill. App. 3d at 535-36, 447 N.E.2d at 516.

*Cf. In re J.M.S.* (1981), 92 Ill. App. 3d 1141, 1142, 416 N.E.2d 734, 735 (vacating restitution order imposed on revocation of probation stating, "[T]he trial court lacked the authority to order restitution to a victim of the offense leading to the modification of the terms of probation").

This court in *People v. Flanagan* (1985), 133 Ill. App. 3d 1, 5, 478 N.E.2d 666, 668-69, affirmed a restitution order imposed upon conviction of resisting a peace officer, holding the defendant was properly ordered to pay damages for financial loss sustained by a peace officer where the loss was an actual consequence of defendant's criminal actions and the peace officer was named in the information (although defendant was not specifically charged with resisting this officer).

In 1983, the legislature amended section 5—5—6(b) (Pub. Act 83—1061, §1 (1983 Ill. Laws 7226, 7227 (eff. July 1, 1984))) to read:

"[T]he court shall assess the actual out-of-pocket expenses, losses, damages, and injuries suffered by the victim named in the charge *and such other victims who may also have suffered out-of-pocket expenses, losses, damages, and injuries proximately caused by the same criminal conduct of the defendant,* and insurance carriers who have indemnified the named victim or other victims \*\*\*." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6(b).)

The amended language of section 5—5—6(b) was considered in *People v. Ensley* (1985), 132 Ill. App. 3d 842, 843-44, 477 N.E.2d 760, 761, where the court affirmed a restitution order for the value of 19 stolen

items as proper, although defendant was charged with stealing only seven items, as the theft of all items stemmed from the same offense involving the same victim. See also *People v. Duff* (1987), 152 Ill. App. 3d 896, 505 N.E.2d 36, wherein the court upheld an order directing defendant to pay the medical bills of a victim whose name was not included in the criminal information (and as to whom there was no evidence of medical expenses he incurred) as an unnamed victim within the language of section 5—5—6(b) as he was (1) a victim of the same criminal conduct of the defendant and (2) there was evidence he incurred the same treatment as the victim named in the criminal information.

The legislative history of this amendatory language in section 5—5—6(b) reflects the clear legislative intent to expand the coverage of the restitution statute. (83d Ill. Gen. Assem., House Proceedings, April 7, 1983, at 51-56 (statements of Representatives Ropp, Hawkinson, and Cullerton (House Bill 67)).) Representative Ropp stated:

> "This House Bill 67 provides new standards to make convicted persons more liable to pay, as restitution, the full amount of damages that have been so besought on him. *** It also extends the coverage of permissible restitution to include unnamed victims and insurers. And three, it also gives the authority to include restitution to victims of crimes where the charges of these crimes are dismissed as a part of a plea agreement on other offenses. *** And it will also take care of those people who may not have been included in, heretofore, specific charges but may have been [injured as] a result of arson or other kind of bad acts." (83d Ill. Gen. Assem., House Proceedings, April 7, 1983, at 51 (statements of Representative Ropp).)

We conclude the restitution ordered herein was within the language and intent of section 5—5—6(b) as amended.

The respondent next challenges the condition of probation ordering him to serve a 30-day period of incarceration at the end of his two-year probation term, contending it is an abuse of discretion. He further argues this order should be vacated because the trial court did not provide a specific date for a remission hearing prior to commencement of his incarceration.

■ The State argues this issue has been waived since V.L.F. failed to challenge or object to this condition when it was imposed. We agree. Absent a clear abuse of discretion, the sentencing hearing is the sole forum for such complaints and clarifications. *People v. Davis* (1982), 93 Ill. 2d 155, 162-63, 442 N.E.2d 855, 857; *People v. Burke* (1985), 136 Ill. App. 3d 593, 608, 483 N.E.2d 674, 685.

On the merits, respondent's reliance on *People v. Tipton* (1981), 88 Ill. 2d 256, 430 N.E.2d 1023, is misplaced. In *Tipton* the court stated:

> "There is, in our judgment, no doubt of the trial court's authority to impose a period of 'continuous' as contrasted to 'periodic' imprisonment as a condition of probation under section 5—6—3 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—3). And, while we seriously question the advisability of imposing that imprisonment at or near the end of the probationary period in the absence of unusual circumstances or a request by defendant, we do not doubt the trial judge's power to do so." (*Tipton*, 88 Ill. 2d at 262, 430 N.E.2d at 1026.)

Since *Tipton* affirmed a bifurcated sentence similar to the one which is the subject of this appeal, the advisability language may be regarded as advisory in nature.

Finally, we comment on respondent's suggestion that a specific date for a remission hearing must be set by the trial court at the dispositional hearing. Respondent cites *Burke* in support of his argument. There, this court suggested it is better practice for the trial court to specify a date when it will consider remitting all or part of the detention imposed as a condition of probation. The instruction on remand, that the trial court set a date certain for a remission hearing, was given as an aside where the cause was already being remanded to remedy an erroneous sentence in excess of the statutory maximum. While it is not necessary or practical for a trial court to anticipate the exact date so far in advance of a remission hearing, the court should designate a reasonable time frame in which a hearing will be held, rather than placing the burden on the respondent to file a motion to vacate the condition of probation.

Accordingly, the judgment of the circuit court of Champaign County is affirmed, and the cause remanded with directions to set a time frame for hearing at which remission of the detention will be considered.

Affirmed and cause remanded.

LUND and SPITZ, JJ., concur.