NOTICE

Decision filed 04/11/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 190160-U

NO. 5-19-0160

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Christian County. |
| | ) | |
| v. | ) | No. 15-CF-05 |
| | ) | |
| AUSTIN R. N. SUTTON, | ) | Honorable |
| | ) | Bradley T. Paisley, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Moore and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's judgment where the sentence was not an abuse of discretion. The sentence of 30 years for the defendant who was a minor at the time of the offense did not violate the proportionate penalties clause and was not excessive. Further, the circuit court did not improperly consider a factor, psychological harm or threatened serious psychological harm, inherent in the offense.

¶ 2    Pursuant to a negotiated plea of guilty, the defendant, Austin Sutton, was convicted of aggravated criminal sexual assault of a child (720 ILCS 5/11-1.30(b)(ii) (West 2014)) and sentenced to 30 years' imprisonment. On appeal, the defendant contends that the circuit court abused its discretion at sentencing by relying on a factor implicit in the offense—the psychological harm or threat of serious psychological harm his actions caused to the victim. The defendant further contends that the 30-year sentence violates article I, section 11, of the Illinois Constitution (Ill. Const. 1970, art. I, § 11), commonly referred to as the proportionate penalties clause. Finally, the

1

defendant argues that his 30-year sentence was excessive and therefore an abuse of the circuit court's discretion. For the following reasons, we affirm the judgment of the circuit court.

¶ 3                                     I. Background

¶ 4      The facts necessary to our disposition of this appeal are as follows. On January 5, 2015, the State filed an information charging the defendant with one count of aggravated criminal sexual assault, in violation of section 11-1.30(b)(ii) of the Criminal Code of 2012 (Criminal Code). 720 ILCS 5/11-1.30(b)(ii) (West 2014). The State alleged that the offense occurred between December 16, 2012, and October 1, 2014, at a time when the defendant was under 17 years of age and his victim, S.M., was between 9 and 13 years of age. The State alleged that the defendant placed his penis in the anus of S.M., by the use of force. Because he was over 15 years old at the time of the offense, section 5-130(1)(a) of the Juvenile Court Act of 1987 required the defendant to be prosecuted as an adult under an excluded jurisdiction statute, instead of in juvenile court. 705 ILCS 405/5-130(1)(a) (West 2014). The charge of aggravated criminal sexual assault was a Class X felony punishable by 6 to 30 years' incarceration (730 ILCS 5/5-4.5-25(a) (West 2014)) in the Illinois Department of Corrections (IDOC).

¶ 5      On May 5, 2015, the defendant appeared before the circuit court and entered a partially negotiated guilty plea to the aggravated criminal sexual assault charge. According to the terms of the plea agreement, the State would not file any additional charges against the defendant based on any crimes of which they were aware; however, the State could use any uncharged offenses in aggravation at the defendant's sentencing hearing. There was no agreement as to the sentence which would be imposed.

¶ 6      The defendant's sentencing hearing was held on August 11, 2015. At sentencing, the circuit court considered the statutory aggravating factors, finding that the defendant's conduct caused or threatened serious psychological harm, that the defendant had a history of prior juvenile

2

delinquency, and that the sentence was necessary to deter others. In addition, the circuit court cited the defendant's pattern of committing the crime of sexual assault against multiple victims, the potential risk posed to the community, and the court's duty to protect the public from future similar conduct as factors it relied upon.

¶ 7 Further, the circuit court considered the defendant's sex offender evaluation (evaluation). In the course of the evaluation, the defendant stated that at the age of 11, he fondled a 3-year-old female cousin, remarking that during a game of hide-and-seek, he "took advantage of the moment" and "fondled her vagina" by way of digital insertion. The defendant also stated that he sexually assaulted his sister, S.S., when he was 15 years old and she was 13 years old, by rubbing her legs and vagina. He denied insertion. The defendant also admitted to sexually assaulting his cousin S.M., when she was 11 years old and he was 16 years old (the present charge), and that he tried to insert his penis into her anus by bribing her with electronics, but that they were interrupted by her parents. He further stated that he had forced a female "once or twice" to perform oral sex on himself. The defendant attributed these impulses to being bullied at school, which caused him to become more "aggressive."

¶ 8 The evaluation also detailed the defendant's statements to the police and the Illinois Department of Children and Family Services (DCFS). The defendant told the police that he had rubbed S.S.'s vagina over her clothes, that he had sexual thoughts about S.S., and that he had repeatedly masturbated while thinking about touching S.S. The defendant also made her perform oral sex on him about 30 times. The defendant then recounted that he and S.S. would share a bed, that he had inserted his penis into her about 20 to 30 times, occasionally ejaculating inside of her. The defendant admitted that he often used force, pushing down S.S.'s arms and legs. He also performed oral sex on S.S. 10 times. However, S.S. did not disclose these assaults during a forensic

interview. S.S. disclosed that she woke up with the defendant reaching his hand up her leg toward her vagina.

¶ 9    Regarding the defendant's cousin, S.M., the defendant stated that he would let her use his phone or electronics in exchange for her masturbating him or performing oral sex on him. He would digitally penetrate her and force her to commit oral sex.  He stated that an earlier statement he gave to DCFS where he had indicated that he had done this with S.M. about 60 times was likely accurate. He also admitted that he had "regular sex" with S.M. over 30 times, pinning her down by sitting on her shins while he unbuttoned his pants. He demanded that S.M. not tell her father or else they would both be put into foster care and that she could go to jail. The defendant also recounted another time when he forced a 16-year-old girl to perform oral sex on him.

¶ 10    The defendant told the evaluator that he was at an in-patient psychiatric treatment facility when he was arrested on the current charge. The defendant stated that he had also received three years of sex offender treatment after he molested a three-year-old girl in Springfield.

¶ 11    The evaluation went on to indicate that the defendant's involvement with DCFS dated back to when he was three or four years old, when he tried to light his family's house on fire by igniting toys that he had piled in the middle of the living room.  The defendant claimed that he had been sexually abused by his father, in that his father had the defendant perform oral sex on him, and that he was a victim of physical abuse as a child.  He also claimed to have a learning disability and a behavioral disorder. He expressed a desire for additional sex offender treatment.

¶ 12    In assessing the defendant, the evaluator admitted that "there is very little empirical evidence to support any measure available to assess predictions of risk for adolescent sexual offenders," and thus "several different measures [were performed] with the purpose of giving decision makers a wide range of scale results to review." On the Juvenile Sexual Offense Recidivism Risk Assessment Tool - II (JSORRAT-II), the defendant scored a 13. The test scale

maximum is 8+, indicative of "moderate-high risk." The evaluator conceded that "high" risk is not available as a result on this test, but if it were, it would have been given to the defendant.

¶ 13    The defendant was also given the "Sexual Adjustment Inventory" (SAI), a test intended to "identify sexually deviate and paraphiliac behavior in people accused or convicted of sexual offenses." The defendant's scores on the "child molestation" and "sexual assault" categories were in the "severe" range, suggesting pedophiliac thoughts, and that the defendant is a "person who could be dangerous" and presents as "sexually assaultive." The defendant also scored "severe" on the "violence" category, and that the defendant "could be dangerous to himself and others." The defendant scored "severe" in antisocial attitudes, distress, and impulsiveness. With respect to impulsiveness, the evaluator noted that "impulsive sexual behavior can result in numerous negative consequences."

¶ 14    Finally, the evaluation stated that the defendant was given the Sexual Violence Risk-20 (SVR-20) and was rated as a "high risk to reoffend."  He was also rated a high risk to reoffend on the Estimate of Risk of Adolescent Sexual Offense Recidivism Version 20 (ERASOR).

¶ 15    The defendant's mother testified at the sentencing hearing that the defendant had started a fire at their house when he was four years old and that he received counseling following that event. She also testified that the defendant had engaged in sexually deviant behavior in Sangamon County in 2007, when he was 10 years old, and received four years of counseling.  She said her son often projected a veneer of change, and that he was skilled at "covering his tracks," but that he was not getting any better. She estimated that the defendant had received 5½ to 6 years of counseling.

¶ 16    At the sentencing hearing, the defendant admitted to having sexual intercourse with his sister, S.S., 2 to 3 times, maybe 4, not the 60 to 80 times he initially told the police. He attributed the exaggeration to the police "hounding" him while he was being questioned. He also admitted to sexually abusing his cousin, S.M., 7 to 8 times, not the 90 to 100 times he told police.

¶ 17    The defendant claimed to have been sexually abused by his father at the age of four. He claimed that the counseling he received after he sexually abused the three-year-old child in Sangamon County was not beneficial because, in his estimation, he was "so young." The defendant admitted that he had received counseling between the ages of 10 to 15, and that he committed the present sexual assault when he was 16. However, the defendant claimed now that he was "older," he no longer had the sexual impulses. The defendant attributed his sexually assaultive behavior to being angry because his father had sexually abused him and that his father had passed away. The defendant also stated that engaging in the sexual conduct made him "feel more in power."

¶ 18    The State recommended a sentence of 30 years' incarceration. The defendant's counsel sought the minimum sentence of six years' incarceration. In his statement in allocution, the defendant stated that "due to the fact I was growing and not fully developing, and not fully developed yet, that, uh, I, I should—I do need help."

¶ 19    In imposing sentence, the circuit court remarked that counseling to that point had not helped the defendant, and that it did not believe that counseling was likely ever going to help. The circuit court found that the defendant's conduct threatened serious harm to the victim, though the court mused that the harm would not likely manifest itself for some years given the age of the victim. The circuit court considered the defendant's history of prior delinquency (the defendant was adjudicated for sexually assaulting a 3-year-old girl when he was 10 years old) and the need for deterrence, as well as the risk that the defendant posed to the community. The circuit court noted the sex offender evaluation. It recognized that because of the uncertainty in any one test, empirically, for a youthful sex offender, the defendant was given an array of tests. In reviewing these test results, the circuit court noted the multiple indicators of the defendant's sexual behavior and risk of reoffending. The circuit court commented that the defendant had been given a break in terms of how many sexual offenses he could have been charged with, noting that with the offenses

6

he had admitted to committing, he could have faced "decades and decades and decades" in prison instead of the maximum 30 years for the one offense he pleaded guilty to.

¶ 20    Before the circuit court sentenced the defendant, it noted several factors that it considered. These included the defendant's age; the factual basis that was presented; the presentence investigation report (PSI); the sex offender evaluation; the history, character, and attitude of the defendant; the evidence and arguments; and the statement in allocution presented during the sentencing hearing. The circuit court also heard testimony from the defendant's mother who testified on behalf of the State, and the defendant, who testified on his own behalf. Taking all of that into consideration, the circuit court imposed a sentence of 30 years' incarceration in IDOC.

¶ 21    The defendant filed a motion for reduction of sentence on August 11, 2015, an amended motion to reconsider sentence on September 10, 2015, a second amended motion to reconsider sentence on January 5, 2016, and a third amended motion to reconsider sentence on March 14, 2016. A hearing was held on the third amended motion to reconsider sentence on March 14, 2016, and the circuit court denied the defendant's motion.

¶ 22    The defendant filed a notice of appeal on March 15, 2016. On March 14, 2018, this court vacated the circuit court's March 14, 2016, order denying the defendant's postplea motion and remanded this matter to the circuit court for strict compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). *People v. Sutton*, No. 5-16-0113 (2018) (unpublished summary order under Illinois Supreme Court Rule 23(c)(2)). This court further directed that the defendant be permitted to file a new postplea motion if the defendant or his counsel concluded that a new motion was necessary.

¶ 23    On December 11, 2018, the defendant filed another third amended motion to reconsider sentence (postplea motion) along with a compliant Rule 604(d) certificate. The issues raised in the postplea motion were (1) that the circuit court erred in failing to consider the defendant's age, level

of maturity, and the factors attendant thereto; (2) that the circuit court erred in relying heavily on the actuarial risk assessment tools used by the evaluator to determine that the defendant posed a risk to the community, as they were not empirically valid when applied to juveniles; (3) that the circuit court ignored the defendant's rehabilitative potential; (4) that the circuit court based its sentence on the improper factor that the defendant had received considerable "breaks" from the State; and (5) that the defendant's sentence violated the eighth amendment to the United States Constitution and was excessive.

¶ 24    A hearing was held on the defendant's postplea motion on April 11, 2019, and the motion was denied by the circuit court. This appeal follows.

¶ 25                                    II. Analysis

¶ 26                    A. Consideration of a Factor Inherent in the Offense

¶ 27    On appeal, the defendant first argues that the circuit court improperly considered, in aggravation, that the defendant's conduct caused or threatened serious psychological harm. The defendant argues that there was no evidence presented at sentencing that S.M. was psychologically harmed by the defendant's actions, nor circumstances that would be expected to cause psychological harm beyond that inherent in the charge of aggravated criminal sexual assault.

¶ 28    The State argues that the defendant waived this issue as the defendant failed to object to the circuit court's consideration of the aggravating factor and did not raise the issue in his postplea motion. To preserve a sentencing issue for appeal, a defendant must both object at the sentencing hearing and raise the issue in a motion to reduce sentence. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010); see also 730 ILCS 5/5-4.5-50(d) (West 2018). However, our supreme court has held that counsel is not required to interrupt the circuit court as it discusses factors in aggravation in order to preserve a claim of error regarding the court's remarks. *People v. Saldivar*, 113 Ill. 2d 256, 266 (1986). While a failure to object to the circuit court's commentary when pronouncing the

8

defendant's sentence has been excused, the defendant here also failed to raise his claim in a postplea motion. Due to the defendant's failure to raise this issue at all in the circuit court, we agree with the State that the defendant's argument was forfeited.

¶ 29     In his reply brief, however, the defendant requests review of this issue under the plain error doctrine of Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967), which permits this court to address a forfeited issue if the evidence is closely balanced or the error affects substantial rights. *People v. Sargent*, 239 Ill. 2d 166, 189 (2010). The State argues that the defendant also waived plain error review as it was not raised in his initial brief to this court. Pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018), "[p]oints not argued are forfeited and shall not be raised in the reply brief ***." However, we disagree that the defendant's failure to include his plain error argument in his opening brief precludes us from considering it. The Illinois Supreme Court has recognized that a purpose of the plain error rule is to preserve the integrity and the reputation of the judicial process. *People v. Gard*, 158 Ill. 2d 191, 205 (1994). As such, the Illinois Supreme Court has considered a defendant's plain error argument raised for the first time in a reply brief. See *People v. Thomas*, 178 Ill. 2d 215, 235 (1997). The State preemptively addressed plain error in its response. Therefore, we find it is consistent with the purpose of the plain error rule and fundamental fairness to address this issue under the doctrine of plain error.

¶ 30     The doctrine of plain error may be applied to remedy errors so plain and prejudicial that failure to object to them is not a waiver for purposes of appeal. *People v. Davis*, 145 Ill. 2d 240, 251 (1991). In the sentencing context, a defendant must show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing. *Id.* The burden of proof rests with the defendant to establish each prong of the plain error doctrine. *People v. Naylor*, 229 Ill. 2d 584, 593 (2008).

9

¶ 31    The defendant does not argue that the evidence at the sentencing hearing was closely balanced but argues that the circuit court's consideration of a factor inherent in the offense as an aggravating factor at sentencing is reviewable under the second prong of the plain error doctrine because it affects the defendant's fundamental right to liberty. See *People v. Martin*, 119 Ill. 2d 453, 458 (1988). The second scenario is potentially present here, because when a circuit court considers erroneous aggravating factors in determining the appropriate sentence of imprisonment, the defendant's fundamental right to liberty is unjustly affected, which is a serious error. *People v. James*, 255 Ill. App. 3d 516, 531 (1993). For plain error to exist, however, we must first decide that an error actually occurred. *Naylor*, 229 Ill. 2d at 593.

¶ 32    Imposition of a sentence is normally within a circuit court's discretion, and there is a strong presumption that the circuit court based its sentencing determination on proper legal reasoning, such that the circuit court's sentencing decision is reviewed with great deference. *People v. Chaney*, 379 Ill. App. 3d 524, 527 (2008). Nevertheless, whether the circuit court improperly considered a factor implicit in the offense is reviewed *de novo*. *People v. Phelps*, 211 Ill. 2d 1, 12 (2004). The burden is on the defendant to affirmatively establish that the sentence was based on improper considerations. *People v. Dowding*, 388 Ill. App. 3d 936, 942-43 (2009).

¶ 33    Generally, a factor implicit in the offense for which the defendant has been convicted cannot be used as an aggravating factor in sentencing for that offense, absent a clear legislative intent to accomplish that result. *People v. Ferguson*, 132 Ill. 2d 86, 97 (1989). Such dual use of a single factor is often referred to as a "double enhancement." *People v. Gonzalez*, 151 Ill. 2d 79, 85 (1992). The prohibition against double enhancements assumes that, in designating the appropriate range of punishment for a criminal offense, the legislature considered the factors inherent in the offense. *People v. Rissley*, 165 Ill. 2d 364, 390 (1995). However, the rule should not be applied

10

rigidly, because public policy requires that a sentence be varied according to the circumstances of the offense. *People v. Bunning*, 2018 IL App (5th) 150114, ¶ 15.

¶ 34    Section 5-5-3.2 of the Unified Code of Corrections (Unified Code) provides that a sentencing court may consider certain factors as reasons to impose a more severe sentence, including whether "the defendant's conduct caused or threatened serious harm." 730 ILCS 5/5-5-3.2(a)(1) (West 2018). When considering whether the defendant's conduct "threatened serious harm," the sentencing court compares the conduct in the case before it against the minimum conduct necessary to commit the offense. *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 67. The court must examine "the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant." (Internal quotation marks omitted.) *Id.* "The commission of any offense, regardless of whether the offense itself deals with harm, can have varying degrees of harm or threatened harm." *Saldivar*, 113 Ill. 2d at 269. Accordingly, the sentencing court's attention should be directed at the degree or gravity of the defendant's conduct, the force employed, and the nature and circumstances of the offense. *Id.*

¶ 35    In the present case, the circuit court pronounced, at sentencing, as follows:

"I don't think anybody can dispute the fact that [the defendant's conduct] at least threatened serious harm, if not caused serious harm. The problem with these cases is, I can't tell you today what the effect of that harm is going to be to this victim *** or anybody else that he has victimized. We will only know the answer to that question probably fifteen or twenty years. As we know, many kids that are victims of this type of behavior often times don't come forward for a long, long time. They often don't get the proper care and treatment that they need. And they often suffer later in terms of addictions to alcohol and drugs to try and deal with the pain that they're in, difficulty in forming and keeping

11

relationships. There is all kinds of things that are out there. Uh, and we don't know the answer to that question. But certainly, the conduct threatens serious harm here."

¶ 36     It is clear from the record that the circuit court considered, in determining the appropriate sentence, that the defendant's criminal conduct either caused or threatened to cause serious psychological harm to S.M.

¶ 37     It is well established that in determining the exact length of a particular sentence within the sentencing range for a given crime, the circuit court may consider as an aggravating factor the degree of harm caused to a victim, even where serious bodily harm is arguably implicit in the offense of which the defendant is convicted. *Saldivar*, 113 Ill. 2d at 269. While we agree that there will be some degree of psychological harm suffered by a victim in almost any sexual assault, psychological harm may be suffered in varying degrees based on the acts perpetrated by the defendant as well as the characteristics of the defendant and the victim. Further, the potential for psychological harm will vary based on the specific circumstances of each case.

¶ 38     The statute under which the defendant was convicted requires that the defendant be under the age of 17, commit an act of sexual penetration with a victim under the age of 13, and that the defendant use force or threat of force to commit the act. 720 ILCS 5/11-1.30(b)(ii) (West 2014). Harm is not an element or inherent in the offense. *People v. Kerwin*, 241 Ill. App. 3d 632, 636 (1993). Even assuming that it was, the majority of cases addressing this issue have found the psychological harm suffered by child victims of sexual assault proper for consideration in sentencing. See, *e.g.*, *People v. Nevitt*, 228 Ill. App. 3d 888, 892 (1992) (psychological harm to a three-year-old victim was a proper consideration when sentencing for aggravated criminal sexual assault); *People v. Ulmer*, 158 Ill. App. 3d 148, 151 (1987) (a proper aggravating factor for the court to consider was the psychological harm to 10-year-old victim); *People v. Burton*, 102 Ill.

12

App. 3d 148, 153-154 (1981) (psychological trauma to child victim was properly considered as an aggravating factor).

¶ 39    The defendant relies, in large part, on *People v. Calva*, 256 Ill. App. 3d 865 (1993), for his argument that a sentencing court's consideration of serious psychological harm to children due to sexual abuse is improper when there is no evidence presented of a greater degree of psychological harm than is inherent in any instance of sexual assault. In *Calva*, the defendant pleaded guilty to six counts of aggravated criminal sexual assault, based on three physical acts, occurring on the same date. *Id.* at 870. The court acknowledged that our courts "have held that it can be inferred that a child who is the victim of sexual assault has sustained psychological damage." *Id.* at 875. However, the *Calva* court found that because no proof was offered of psychological harm, "the degree of any psychological harm used in aggravation would be minimal, as it would be limited to the degree of harm inherent in any aggravated sexual assault of a child." *Id.*

¶ 40    We do not find *Calva* persuasive. In *People v. Muraida*, 2021 IL App (4th) 180650-U, the court cited a list of 27 cases which had distinguished *Calva*, noting that "*Calva* is an outlier, and of the 27 times it has been cited by Illinois courts as of this writing, none have been in actual support of defendant's proposition here." *Id.* ¶ 59; see also Ill. S. Ct. R. 23(e)(1) (eff. Jan. 1, 2021) (stating nonprecedential orders under Rule 23(b) may be cited for persuasive purposes). Our supreme court has recognized that aside from any physical injury a child may suffer in a sexual assault, children who are sexually assaulted are subject to chronic psychological problems that may be even more pernicious. *People v. Huddleston*, 212 Ill. 2d 107, 135 (2004). Because of their emotional immaturity, children are exceptionally vulnerable to the effects of sexual assault. *Id.* Long term studies of child sexual abuse victims have shown that sexual abuse is harmful to the children's psychological, emotional, and sexual development in ways which no just or humane society can tolerate. *Id.*

13

¶ 41    One of the cases that distinguished *Calva* was this court's decision in *People v. Bunning*, where we held that the circuit court's consideration of psychological harm to a child victim of sexual abuse was appropriate where (1) the victim testified regarding the instances of abuse, (2) the circuit court noted evidence that the child sought psychological treatment, and (3) the mother of the victim submitted an impact statement which outlined the upheaval caused by the defendant's abuse and referred to counseling appointments. *Bunning*, 2018 IL App (5th) 150114, ¶¶ 20-21.

¶ 42    While this court recited a list of evidence which the sentencing court could have relied upon in determining that the minor victim in *Bunning* suffered psychological harm, that finding was not intended to be indicative of a rule that such specific elements were necessary in a circuit court's consideration of a victim's actual or threatened psychological harm. Psychological trauma to a victim may be considered as an aggravating factor without direct evidence of trauma. See *People v. Reber*, 2019 IL App (5th) 150439, ¶ 94 (citing *Burton*, 102 Ill. App. 3d at 154).

¶ 43    In this matter, the defendant acknowledges that some courts have indicated that psychological harm may be inferred from the facts of the case yet points out that most of the records in those cases include either evidence or circumstances supporting an inference that the minor suffered psychological harm greater than that inherent in the offense. See *People v. Lloyd*, 92 Ill. App. 3d 990, 996 (1981); *Burton*, 102 Ill. App. 3d at 154. As such, the defendant argues that the record here only demonstrates a degree of harm inherent in the offense.

¶ 44    We disagree with the defendant that the record in this case does not support an inference of a degree of harm greater than that inherent in the offense. While in the present case there was no victim impact statement or victim testimony that would suggest the victim, S.M., suffered serious psychological harm, the circumstances before the circuit court did not represent the minimum conduct necessary for a defendant to commit aggravated criminal sexual assault. Further, the circuit court commented on and appropriately relied upon its own experience

14

regarding the threat of serious psychological harm to the victim. The circuit court specifically mentioned its knowledge that victims are often reluctant to disclose sexual assault, many times they do not receive proper care and treatment, and they often suffer from addiction later in life when trying to cope with the pain caused by the perpetrator. The circuit court further mentioned its knowledge that often victims of sexual assault have difficulty forming and keeping relationships.

¶ 45    We acknowledge that a determination made by a trial court based on private investigation or private knowledge, untested by cross-examination or the rules of evidence, may result in deprivation of due process of law. *People v. Wallenberg*, 24 Ill. 2d 350, 354 (1962). However, "[a] trial judge does not operate in a bubble; [he] may take into account [his] own life and experience in ruling on the evidence." *People v. Thomas*, 377 Ill. App. 3d 950, 963 (2007). There is no evidence in the record that the circuit court based its finding that the defendant's actions threatened serious psychological harm to the victim on outside research. Further, there is no allegation that the trial judge possessed or employed personal knowledge about the specific facts at issue in this case. Rather, the circuit court employed its common knowledge and judicial experience to acknowledge the ways that psychological harm can manifest when a child victim is sexually assaulted.

¶ 46    The circuit court found, based on its experience and the facts and record before it, that the defendant's conduct threatened serious psychological harm to the victim. See *Reber*, 2019 IL App (5th) 150439, ¶ 96 (consideration of possible psychological harm to a minor victim was not erroneous where the court heard testimony at sentencing hearing of an "other crimes" witness about her own psychological damage resulting from the defendant's sexual abuse in addition to the circuit court's own experience); *Lloyd*, 92 Ill. App. 3d at 993 (the record of the case raised a reasonable inference that the young victim suffered emotional injury as a result of the incident

15

where the defendant confessed to attempting to have intercourse with a three-year-old); *Ulmer*, 158 Ill. App. 3d at 150 (court appropriately considered psychological harm to the victim in sentencing, commenting that the particular offense "could very well leave a permanent scar on this young lady"); *People v. Fisher*, 135 Ill. App. 3d 502, 505 (1985) ("We reject defendant's contention that psychological harm should not be considered in aggravation because it is present to some degree in all sex crimes committed upon minors."); *People v. Wolfe*, 2021 IL App (4th) 190277-U (the factors cited in *Bunning* were not necessary for the consideration of psychological harm to the victim); see also Ill. S. Ct. R. 23(e)(1) (eff. Jan. 1, 2021) (stating nonprecedential orders under Rule 23(b) may be cited for persuasive purposes).

¶ 47 In the present case, the defendant pleaded guilty to one count of aggravated criminal sexual assault. The plea was entered on a partially negotiated basis, with no agreement as to sentence. Both parties agreed that the evidence of other crimes that the State could have, but agreed not to charge, could be used at sentencing. The minimum conduct required to perpetrate the offense was for the defendant, a person under 17 years of age, to commit a single act of sexual penetration with a victim between 9 and 13 years of age and used force or threat of force to commit the act. 720 ILCS 5/11-1.30(b)(ii) (West 2014).

¶ 48 The factual basis for the plea stated that the victim, S.M., disclosed that the defendant had sexually assaulted her between the dates of December 16, 2012, and October 1, 2014, when the defendant placed his penis in the anus of S.M., whom was between 10 and 11 years old at the time of the offense. Further, the State offered that the defendant

"held her down and pinned her arms and legs down and used force physically as well as mentally stating that—not to tell anyone or they would both be in trouble, stating that the acts which occurred numerous times, although we've charged as once, when he did use

16

such force, it would cause her to cry and that she would also state that this was unwanted behavior and that she repeatedly stated for him to get off of her and to not do these acts." The defendant testified at his sentencing hearing that he sexually abused S.M. about seven to eight times. The defendant denied the previously disclosed number of occasions that he confessed to sexually abusing S.M. but did testify that he forced S.M. to perform oral sex by physically putting her head down. During cross-examination, the defendant testified that the discrepancy between his prior confessions and his testimony at sentencing was because of the interviewing techniques used by those conducting his prior interviews. He did not, however, describe them or how they were coercive. The defendant further testified that when he would force himself upon his victims, it would make him "feel more in power."

¶ 49    We reject the defendant's contention that the circuit court should not have considered psychological harm in aggravation because it is present to some degree in all sex crimes committed upon minors. The seriousness of the defendant's conduct in this matter went well beyond the minimum conduct required to commit the offense of aggravated criminal sexual assault. Therefore, we find that the record supports the circuit court's consideration in aggravation that the defendant's conduct threatened serious psychological harm to the victim, S.M. Having concluded that the circuit court's consideration of psychological harm to the victim was a proper consideration in sentencing, we find that there was no error. If there is no error, there can be no plain error and the defendant's forfeiture must be honored.

¶ 50                         B. Proportionate Penalties Clause

¶ 51    The proportionate penalties clause states that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "[T]o succeed on [a] proportionate-penalties claim, [a] defendant must show that either the penalty imposed (1) is cruel, degrading, or so wholly

17

disproportionate to the offense that it shocks the moral sense of the community *** or (2) differs from one imposed for an offense containing the same elements." *People v. Brown*, 375 Ill. App. 3d 1116, 1118 (2007). The defendant argues solely under the first alternative. Specifically, the defendant contends that his sentence is disproportionate to the seriousness of the offense, especially when considered in light of his age, and that the circuit court failed to consider his rehabilitative potential. Whether a sentence is constitutional is a question of law we review *de novo*. *People v. Lawson*, 2015 IL App (1st) 120751, ¶ 45.

¶ 52　　The defendant's sentence resulted from the convergence of several statutes. First, because the defendant was charged with aggravated criminal sexual assault, the automatic transfer statute (705 ILCS 405/5-130 (West 2014)) required him to be tried as an adult. Second, Class X sentencing requires a sentence of 6 to 30 years' imprisonment (730 ILCS 5/5-4.5-25 (West 2014)), to be served at 85% (*id.* § 3-6-3(a)(2)). The circuit court sentenced the defendant to the maximum sentence within the sentencing range, 30 years' imprisonment, thus resulting in the defendant serving a minimum of 25½ years of incarceration.

¶ 53　　The defendant's claim is an as-applied challenge. A party raising an as-applied challenge requires a showing that the statute is unconstitutional as it applies to the specific facts and circumstances of the challenging party. *People v. Holman*, 2017 IL 120655, ¶ 29. All as-applied constitutional challenges are, by definition, dependent on the specific facts and circumstances of the person raising the challenge.

¶ 54　　The defendant cites to a line of cases providing heightened protection to juveniles in sentencing. See *Miller v. Alabama*, 567 U.S. 460, 479 (2012) (eighth amendment prohibits mandatory life without parole sentences for juvenile offenders convicted of homicide); *Roper v. Simmons*, 543 U.S. 551, 574-75 (2005) (eighth amendment prohibits death penalty for juveniles

who commit homicide); *Graham v. Florida*, 560 U.S. 48, 82 (2010) (eighth amendment prohibits mandatory life without parole sentences for juveniles who commit nonhomicide offenses).

¶ 55 The defendant claims that his sentence shocks the moral sense of the community as the defendant did not commit murder and the defendant will not be eligible for release from prison until he is 42 years old. The defendant states that the average sentence of an adult offender charged with the same crime is less than the maximum of 30 years and cites to numerous cases where lesser sentences were established for adult offenders. The defendant also argues that the circuit court did not contemplate that the defendant could be restored to useful citizenship. The defendant claims that his age was not considered by the circuit court in connection with lessened culpability or with the possibility for rehabilitation. The defendant further argues that the circuit court ignored the sex offender evaluation's acknowledgment that

> "[r]esearch points out that adolescent offenders are more amenable to treatment than adults due to the fluid nature of their brain development. In other words, even though the offenses [the defendant] has committed are serious, there is hope for his recuperation. This hope is due to the fact that his brain will continue to develop over the next 6-9 year period."

In determining whether a sentence shocks the moral sense of the community, this court will consider both objective evidence and "the community's changing standard of moral decency." *People v. Hernandez*, 382 Ill. App. 3d 726, 727 (2008). The constitution's references to "seriousness of the offense" and "the objective of restoring an offender to useful citizenship" are to be considered separately. *People v. Cetwinski*, 2018 IL App (3d) 160174, ¶ 68.

¶ 56                                    1. Seriousness of the Offense

¶ 57 Before considering the defendant's rehabilitative potential, we note the seriousness of the offenses he committed. "Factors to be considered in determining the seriousness of an offense include the degree of harm, the frequency of the crime, and the risk of bodily injury associated

with it." *Huddleston*, 212 Ill. 2d at 129. The defendant was charged with and pleaded guilty to aggravated criminal sexual assault, a Class X felony, and the mandatory sentencing range was between 6 and 30 years' incarceration. See 730 ILCS 5/5-4.5-25 (West 2014). The defendant admitted to having sexually assaulted a 9-year-old victim who was his cousin by engaging in an act of sexual penetration with his penis to her anus, at a time when the defendant was between 15 and 16 years old.[1] The defendant used force in his sexual assault by pinning S.M.'s arms and legs down and coerced her into silence by bribing her with the use of electronics and threatening her that they both would get into trouble if she told anyone.

¶ 58     While the defendant pleaded guilty to a single count of aggravated criminal sexual assault, a serious offense in itself, he had confessed to many more instances of sexual assault in interviews with the police and DCFS. The defendant further admitted to committing at least six other acts of sexual assault through his testimony at his sentencing hearing.

¶ 59     We will first address the defendant's argument that the State's repeated references to the defendant's multiple victims and an ongoing pattern of sexual assaults are unsupported by the record. In addition to lack of evidence, the defendant argues that the circuit court's consideration of evidence of other crimes was in error because it was unreliable.

¶ 60     We do not find error in the circuit court's consideration of the defendant's confession to other instances of sexual assault and find that such reliance was proper, and both supported by the record and reliable for the purposes for which it was considered.

¶ 61     It is clear from the record that the circuit court considered the other crimes evidence presented in the police reports and sex offender evaluation, as well as through the defendant's testimony, for purposes of analyzing the seriousness of the offense as well as the character and

---

[1]The information alleged the offense was committed between December 16, 2012, and October 1, 2014. The defendant was 15 years and 1 day old on December 16, 2012, having been born on December 15, 1997.

20

likelihood to reoffend. While the record may not be clear as to the exact number of occasions the defendant committed sexual assault, the defendant's admissions were certainly detailed enough, even giving credence to the most minimal of the defendant's admissions, to support an ongoing pattern of sexual assault against S.M., perpetrated by the use of force and manipulation. The defendant does not argue that his statements were inadmissible but that they were inconsistent and, by implication, unreliable. Further, the defendant argues that his statements were not corroborated.

¶ 62    We note that the discretion of trial judges in hearing evidence and determining appropriate sentences is broad, but there are limits to this discretion. *People v. Jackson*, 149 Ill. 2d 540, 549 (1992). The supreme court has held that a circuit court must exercise care to ensure the accuracy of information considered and avoid the prejudicial impact of improper materials. *Id*. While our courts have not prescribed any specific burden of proof at sentencing, it has been consistently stated that relevance and reliability are the important factors in the consideration of the evidence at sentencing. *Id*. Those questions are initially determined by the trial judge in the exercise of informed discretion. *People v. La Pointe*, 88 Ill. 2d 482, 498 (1981); see also *People v. Foster*, 119 Ill. 2d 69, 96 (1987).

¶ 63    According to the terms of the partially negotiated guilty plea, the State agreed not to file any additional charges that it was aware of at the time of the plea. The State informed the circuit court that it would be using the other crimes in aggravation at the sentencing hearing and the defendant's counsel agreed. Where, as here, the defendant admitted to an ongoing pattern of sexual crimes perpetrated against multiple victims during police interviews, the sex offender evaluation, and in the form of sworn testimony relating to the victims S.M. and S.S., we cannot find that the circuit court's consideration of the evidence of an ongoing pattern of deviant, forceful sexual behavior perpetrated against multiple victims was an abuse of discretion.

21

¶ 64    The defendant testified that he first sexually offended when he was 10 years old, consistent with his criminal history of adjudication, and continued to do so while in counseling, up until the age of 16. That indicates at minimum a six-year pattern of sexual abuse against his victims at times during which he was under the jurisdiction of the juvenile court for his prior adjudication for sexual assault and engaged in ongoing treatment to prevent further acts of sexual abuse. The defendant admitted to deviant sexual conduct that was relevant to a determination of a proper sentence in that it bore upon the seriousness of the offense and the likelihood that the defendant would commit other offenses. The defendant's pattern of sexual offending was corroborated, in addition to his own confessions and testimony, by both a prior offense contained within the defendant's criminal history, testimony of the defendant's mother, the factual basis presented by the State, and the disclosure of the victim, S.M., of the charged crime as referenced in the factual basis. The defendant's confession to multiple acts of sexual assault perpetrated against S.S., despite the fact that S.S. did not disclose those offenses, was corroborated both by the defendant's pattern of sexual assault and S.S.'s disclosure that she woke up with the defendant reaching his hand up her leg toward her vagina. While the State could have proven more fully at sentencing each of the defendant's confessions, we will not second-guess the circuit court in crediting the defendant's admissions under these facts.

¶ 65    The defendant next argues that there was no evidence of harm to the victim and that the evidence against him was "minimal." The sexual assault of a minor occupies a unique place in the realm of "seriousness." The supreme court has recognized that minors subjected to sexual assault, apart from the possibility of physical injury, are subjected to psychological harm so pernicious that sexual assault is just shy of homicide as a violation of self. *Huddleston*, 212 Ill. 2d at 135. The supreme court acknowledged that the impact of sexual assault on a child can be even more

22

profound than that experienced by an adult, in that child victims are especially vulnerable to the effects of sexual assault. *Id.*

¶ 66     For the reasons stated above regarding psychological harm, as well as our supreme court's commentary in *Coty*, 2020 IL 123972, regarding the harm caused to victims of sexual assault, we disagree that the circuit court was without information in the record to consider harm to the victim in fashioning a sentence within the sentencing range.

¶ 67     Regarding the defendant's claim of minimal evidence, we must also disagree. The defendant pleaded guilty to one count of aggravated criminal sexual assault in exchange for a promise from the State not to pursue any other charges of sexual assault that were known to the State at the time of the plea agreement. In addition to the defendant's guilty plea, the defendant admitted to many other instances of sexual assault against the victim, S.M. Evidence of sexual assault is often based on the testimony given by the victim and the offender, as the only witnesses to the offense, and we do not find such evidence to be minimal. Therefore, we find that the ongoing and repeated offenses perpetrated against the victim, a young family member, by use of force and manipulation, constituted a very serious offense.

¶ 68     Next, the defendant argues that his 30-year sentence shocks the moral sense of the community because the "average term of imprisonment for an adult who commits sexual assault is 12.2 years." The defendant cites other Illinois cases where defendants did not receive a sentence as lengthy as the one the defendant received here, despite the fact that those cases involved adults who sexually assaulted a minor. Our supreme court has rejected such comparative sentencing challenges involving unrelated cases and we are bound to follow precedent. See *People v. Fern*, 189 Ill. 2d 48, 58-59 (1999). The propriety of the sentence imposed in a particular case cannot be properly judged by the sentence imposed in another, unrelated case. *Id.* As such, we reject the defendant's invitation to do so.

¶ 69    The defendant also argues that the combined effect of the sentencing scheme, as applied to him, violated the proportionate penalties clause largely due to his age. In *Miller*, the Supreme Court recognized that "children have a lack of maturity and underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking." (Internal quotation marks omitted.) *Miller*, 567 U.S. at 471. We do not believe that *Miller* or its progeny supports a finding that a minor, transferred to adult court and sentenced to the maximum sentence within the sentencing range violates the proportionate penalties clause.

¶ 70    In *People v. Miller*, our supreme court acknowledged that as our society evolves, so too do our concepts of elemental decency and fairness. *People v. Miller*, 202 Ill. 2d 328, 339 (2002) (*L. Miller*). In that case, the combination of the multiple-murder sentencing statute, the accountability statute, and the automatic transfer provision resulted in a mandatory sentence of life without the possibility of parole for a 15-year-old who acted as a lookout. *Id.* at 341. The supreme court found that the penalty mandated by the multiple-murder sentencing statute as applied to the defendant in that case was particularly harsh and unconstitutionally disproportionate. *Id.* In the instant case, the defendant was the actual perpetrator of the offense of aggravated criminal sexual assault and was not subjected to a mandatory sentence of life in prison without the possibility of parole. Unlike the sentencing court in *L. Miller*, the circuit court here was not prevented from weighing the facts of the case as well as all evidence submitted on the topics of both aggravation and mitigation and fashioning a sentence between 6 to 30 years' imprisonment.

¶ 71    While the defendant cites the *Miller* line of cases focusing on the attendant characteristics of youth and their applicability to decreased culpability and increased potential for rehabilitation, none of these cases preclude a sentence for a minor which is the maximum of the prescribed sentencing range for an adult. See *Miller*, 567 U.S. 460 (eighth amendment prohibits mandatory life without parole sentences for juvenile offenders convicted of homicide); *Roper*, 543 U.S. 551

24

(abolishing the death penalty for all juveniles who commit homicide); *Graham*, 560 U.S. 48 (barring life without parole for juveniles in nonhomicide cases).

¶ 72   To the contrary, both the United States Supreme Court and the Illinois Supreme Court have closely limited the application of the rationale expressed in *Roper*, *Graham*, and *Miller*, invoking it only in the context of the most severe of all criminal penalties. *People v. Patterson*, 2014 IL 115102, ¶ 110. While we acknowledge that the Supreme Court has determined that "children are constitutionally different from adults for purposes of sentencing" (internal quotation marks omitted) (*People v. Lusby*, 2020 IL 124046, ¶ 32), we defer to the legislature for the determination of appropriate sentencing ranges.

¶ 73   In *People v. Patterson*, 2014 IL 115102, ¶ 107, the supreme court considered an as-applied challenge to a sentence asserting that the mandatory transfer statute, alone or in combination with the consecutive sentencing scheme, was unconstitutional as applied to nonhomicide juvenile offenders because they were less deserving of the most serious forms of punishment than murderers. *Id*. In that case, the defendant was sentenced to 12 years in prison on each of three counts of aggravated criminal sexual assault. *Id*. ¶ 108. The sentences were to be served consecutively and the defendant was statutorily mandated to serve at least 85% of his total prison term, or 30 years and 7 months. *Id*.

¶ 74   First, the supreme court considered the proportionate penalties challenge to the transfer statute and held that whether a defendant is tried in juvenile or criminal court is purely a matter of procedure. *Id*. ¶ 104. The supreme court rejected the defendant's assertion that the transfer statute functioned as a sentencing statute, even accepting the assertion that a juvenile who is convicted in criminal court is always subject to a lengthier sentencing range and harsher prison conditions than if he had been adjudicated in juvenile court. *Id*. ¶¶ 104-105. Therefore, the defendant's eighth amendment and proportionate penalties clause challenges were rejected. *Id*. ¶ 106.

¶ 75    Next, the supreme court considered the argument, similar to the one presented in the present case, that the combination of the transfer statute and the applicable sentencing provisions were unconstitutional as applied to nonhomicide offenders because they were " 'categorically less deserving of the most serious forms of punishment than are murderers.' " *Id*. ¶ 107. The supreme court held that, although lengthy, the defendant's 36-year sentence was not comparable to either the death penalty or life in prison without parole. *Id*. ¶ 108. The supreme court noted in *Patterson* that the United States Supreme Court had distinguished the latter sentences from any others, noting both the uniqueness of the severity and irrevocability of the death penalty and the characteristics with death sentences that are shared by no other sentences besides life without parole. *Id.* (citing *Graham*, 560 U.S. at 69). Further, the supreme court noted that the "State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime," but only to give those offenders "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," expressly leaving the specific mechanism and means to each state. *Id.* (quoting *Graham*, 560 U.S. at 75). The supreme court held that a prison term totaling 36 years' imprisonment for a juvenile who personally committed three counts of aggravated criminal sexual assault did not fall into that category. *Id.* ¶ 110; see also *People v. Banks*, 2015 IL App (1st) 130985, ¶¶ 21-23 (defendant's 45-year sentence affirmed); *People v. Pacheco*, 2013 IL App (4th) 110409, ¶ 51 (defendant's 30-year sentence affirmed; declining to extend holdings in *Miller* and *Graham* to mandatory minimum sentencing for juvenile offenders).

¶ 76    In the present case, although the defendant's sentencing range is significant, the defendant was not subject to a sentence comparable to the penalty that was rejected in *Miller* or its progeny. See *People v. Hunter*, 2016 IL App (1st) 141904, ¶ 55 (defendant subject to a sentencing range of 21 to 45 years was not subject to a sentence comparable to the penalty that was rejected in *Miller*). The defendant was also not subject to a situation where the sentencing scheme forced the circuit

court to impose the same sentence on all defendants regardless of their degree of participation in the offense. See *L. Miller*, 202 Ill. 2d at 342 ("the convergence of the Illinois transfer statute, the accountability statute, and the multiple-murder sentencing statute eliminates the court's ability to consider any mitigating factors such as age or degree of participation").

¶ 77     In the present case, the circuit court sentenced the defendant to a discretionary term of 30 years in prison, with the potential to be released after 25 years and 6 months. The defendant in this matter is not serving a sentence of life imprisonment or even a *de facto*[2] life sentence. Further, the defendant was not subject to any mandatory enhancements. The sentencing range in combination with the transfer statute and the truth-in-sentencing law, as applied to the defendant, allowed for a sentence in the range of 6 to 30 years, and a sentence at the higher end of the range was not clearly disproportionate to the seriousness of the offense.

¶ 78                    2. Objective of Restoring an Offender to Useful Citizenship

¶ 79     The defendant maintains that his sentence violates the proportionate penalties clause because it does not, as an objective of the sentence, "restor[e] the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. While restoring the "offender to useful citizenship" is an important factor the circuit court must consider when fashioning a sentence, there is no indication that the possibility of rehabilitation should be given greater weight and consideration than the seriousness of the offense in determining a proper penalty. *People v. Waud*, 69 Ill. 2d 588, 596 (1977).

¶ 80     Here, the circuit court expressed concern that counseling had not helped to date, and there was concern that it would never help. The circuit court reviewed a number of findings in the sex offender evaluation which informed its decision. The circuit court specifically referenced scale number eight on the SAI, that the defendant scored in the 98th percentile for chronic antisocial

---

[2]See *People v. Buffer*, 2019 IL 122327, ¶ 40 ("In determining when a juvenile defendant's prison term is long enough to be considered a *de facto* life without parole, we choose to draw a line at 40 years.").

attitudes and thinking, with the sex offender evaluator noting: "This client needs help. However, intervention or counseling may be difficult due to the client's, this client's antisocial attitudes." The circuit court found that the defendant "is a huge risk to the public. There is no question about it."

¶ 81    The circuit court also considered the age and development of the defendant and the fact that the defendant was abused as a child himself. The circuit court commented that it agreed that the defendant's brain would not fully develop until about age 25 and acknowledged that was the portion of the brain directly related to impulsivity.

¶ 82    Although the defendant argues that the circuit court failed to credit the idea that the defendant could be restored to useful citizenship, the record demonstrates that the circuit court acknowledged that the defendant had the ability to be rehabilitated, but expressly stated its belief that it was going to take a long time of treatment and counseling. The circuit court did not ignore the fact that adolescent offenders are more amendable to treatment than adults due to the fluid nature of their brain development, but the court focused on the need to protect the public and its concern that the defendant was a danger to the community based on his risk of recidivism.

¶ 83    Sentences imposed should provide for the possibility of rehabilitation while at the same time affording society adequate protection. *People v. Ike*, 7 Ill. App. 3d 75, 81 (5th Dist. 1972). Though the defendant was 17 years old when he was sentenced, the evidence presented at sentencing supported a finding that the defendant's rehabilitative potential was minimal, and that the defendant posed a danger to the community.

¶ 84    The circuit court considered the defendant's age and rehabilitative potential. The defendant points out that the sex offender evaluation noted that there was significant time for treatment and rehabilitation and argues that the circuit court was dismissive of the defendant's potential for rehabilitation. The defendant points to the sex offender evaluator's note that there was "hope for

recuperation" because the brain of a person the defendant's age will continue to develop. However, the evaluator went on to state that the "[c]lient is being rated as a high risk to re-offend in a sexually aggressive manner. This evaluator does not believe that [the defendant] can be safely maintained in the community."

¶ 85    Faced with the evidence before it, the circuit court found that the defendant's dangerousness required a lengthy sentence to protect the public, despite the possibility that further brain development may lead to fruitful treatment. The circuit court found that such rehabilitation, if possible, would take a long time. While we recognize that the defendant received a very lengthy sentence, as discussed in *Patterson*, the State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime but must provide offenders with some meaningful opportunity to obtain release based on their demonstrated maturity and rehabilitation. See *Patterson*, 2014 IL 115102, ¶ 108. Here, the defendant will be eligible for release after 25 years and 6 months. Considering the seriousness of the offense and the evidence regarding the defendant's rehabilitative potential, we cannot say that the defendant's sentence violated the constitutional requirement of proportionality. We therefore reject the defendant's challenge under the proportionality clause.

¶ 86                        C. Excessive Sentence

¶ 87    Finally, the defendant argues that the circuit court abused its discretion in sentencing the 17-year-old defendant to the maximum sentence of 30 years' imprisonment. The defendant claims that the circuit court failed to consider factors in mitigation, such as the fact that the defendant pleaded guilty, his age and rehabilitative potential, the circumstances of his childhood, and the financial impact of his incarceration.

¶ 88    Whether the circuit court imposed an excessive sentence is reviewed for an abuse of discretion. *People v. O'Neal*, 125 Ill. 2d 291, 197-98 (1988). The abuse of discretion standard has

29

been viewed as the most deferential standard of review available with the exception of no review at all. *People v. Coleman*, 183 Ill. 2d 366, 387 (1998). The circuit court is in the best position to make a determination of sentence; therefore, a circuit court's sentence is entitled to great deference and weight. *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977). The circuit court has the opportunity to weigh factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). As a result, a reviewing court may not substitute its judgment for that of the circuit court simply because it would have weighed those factors differently. *Id.* A sentence within the statutory limits will not be considered excessive unless it greatly varies with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Lee*, 379 Ill. App. 3d 533, 539 (2008).

¶ 89      It is well established that a circuit court has wide latitude in sentencing a defendant, so long as it neither ignores relevant mitigating factors nor considers improper factors in aggravation. *People v. Roberts*, 338 Ill. App. 3d 245, 251 (2003). The existence of mitigating factors does not mandate imposition of the minimum sentence or preclude imposition of the maximum sentence. *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010). It is the circuit court's responsibility "to balance relevant factors and make a reasoned decision as to the appropriate punishment in each case." *People v. Latona*, 184 Ill. 2d 260, 272 (1998).

¶ 90      Although a circuit court may not disregard mitigating evidence, it may determine the weight to attribute to such evidence and need not recite and assign any value to each factor. *People v. Foxx*, 2018 IL App (1st) 162345, ¶ 50. A defendant has the burden of showing that the circuit court did not consider rehabilitative evidence and mitigating factors before it. *People v. Brown*, 2017 IL App (1st) 142877, ¶ 64. Hence, when mitigating evidence is before the circuit court, a reviewing court presumes the circuit court considered it, absent some indication in the record to the contrary other than the sentence itself. *Id.* Here, the defendant was sentenced to 30 years'

imprisonment for one count of aggravated criminal sexual assault. The range of possible sentences for the defendant's case was 6 to 30 years. 730 ILCS 5/5-4.5-25(a) (West 2014).

¶ 91 The defendant first argues that the circuit court improperly considered that the sentence was necessary to deter others from committing the same crime in aggravation. *Id.* § 5-5-3.2(a)(7). The defendant claims that, as applied to juvenile offenders, the aggravating factor is inappropriate, as research shows deterrence is not effective within the adolescent population. Section 5-4.5-50(d) of the Unified Code requires a defendant to challenge "the correctness of a sentence or to any aspect of the sentencing hearing *** [in] a written motion filed with the circuit court clerk within 30 days following the imposition of sentence." *Id.* § 5-4.5-50(d). If a defendant fails to include an argument in the motion, the issue is forfeited. *People v. Tyus*, 2011 IL App (4th) 100168, ¶ 85. As this argument was not raised in the lower court, the issue is forfeited.

¶ 92 The defendant next argues that the circuit court improperly considered the need to protect the public. The defendant concedes that protection of the public is an appropriate aggravating factor for the circuit court to consider during sentencing; however, the defendant argues that the circuit court's consideration was "in a vacuum." The defendant claims that the circuit court considered protection of the public without balancing the objective of restoring the offender to useful citizenship.

¶ 93 A defendant's rehabilitative potential is not entitled to greater weight than the seriousness of the offense. *People v. Coleman*, 166 Ill. 2d 247, 261 (1995). The circuit court commented during the April 11, 2019, motion to reconsider hearing that the defendant's youth was "something that strongly weighed on my mind in making a decision. *** I did, in fact, take into account his age, his local maturity and those factors that are attendant to those things." The circuit court also mentioned that it was particularly concerned that the defendant scored in the 98th percentile in terms of antisocial behavior, and the 91st percentile with regard to child molestation which was

indicative of deviant and pedophile type thoughts, motivations, tendencies, and possible acts. The circuit court mentioned that the sex offender evaluation indicated that intervention or counseling may be difficult due to the defendant's antisocial attitudes. The circuit court further noted that the defendant scored in the 93rd percentile in terms of sexual assault and that those results indicated that the defendant could be dangerous. The defendant scored in the 96th percentile for dangerousness to himself and others and in the 96th percentile on impulsiveness. The circuit court specifically stated that

> "I was sensitive to and still am his young age, his victimhood, but I had to balance that out against crafting a sentence that would deter other people from doing the same thing if you can to whatever extent the Court can do that, but also primarily to protect the public from this. And the sex offender evaluation report was clearly indicating that he was a high level of risk to reoffend."

¶ 94    We disagree, based on the entire record of this case, that the circuit court fashioned its sentence without considering the objective of restoring the offender to useful citizenship. While the defendant was young when he committed his crime, it was not committed with impetuosity. In addition to the crime for which he pleaded guilty, the defendant admitted to multiple other sexual assaults wherein he described in great detail bribing the victims for compliance, threatening exposure if they revealed the crimes, and preying on younger children because it gave him a feeling of power. The defendant assumed the principal role in committing sexual assaults against his victims. While the defendant's brain was still developing, and he suffered from his own childhood trauma, the circuit court considered those facts. The defendant committed his offense, along with a string of additional sexual assaults, during and after three years of counseling that he engaged in after committing a prior sexual assault against a child.

32

¶ 95    While the sex offender evaluator indicated that research shows adolescent offenders are more amenable to treatment than adults due to the fluid nature of their brain development, and that there is hope for the defendant's recuperation over the next six- to nine-year period, the risk rating ascribed to the defendant was described by the evaluator as a high risk to reoffend in a sexually aggressive manner. The evaluator further opined that the defendant could not be maintained safely in the community.

¶ 96    Additionally, the defendant's mother testified that the defendant gave the impression that he was doing better, but that he was mainly just "covering his tracks" and not getting better at all. The circuit court considered a plethora of diagnostic tests which indicated the defendant's potential for continued sexual dangerousness. The circuit court commented at the defendant's April 11, 2019, postplea motion hearing that it considered the defendant's rehabilitative potential. The circuit court stated: "He has the ability to be rehabilitated, I suppose. It's going to take a long time of treatment and counseling, but as I said he got 30 years ***."

¶ 97    The circuit court was in a position to balance the defendant's youth and rehabilitative potential against a wealth of objective evidence that the defendant was, and continued to be, a dangerous individual who had spent much of his young life sexually offending upon younger girls. We will not reweigh those factors and find that the circuit court's finding regarding the need to protect the public was not an abuse of discretion.

¶ 98    The defendant next argues that the circuit court improperly considered the possible sentences which the defendant could have received for uncharged offenses as factors in aggravation. At the sentencing hearing, the circuit court stated:

> "Uh, in my opinion, [the defendant] has received substantial breaks in this case already by the fact that the State dismissing the juvenile petition and the fact that he has, the State has agreed not to file any additional charges. Quite frankly, he could have been,

even if we just listened to [the defendant] and believe everything he said, we are talking about ten plus additional charges of criminal sexual assault that could have been filed, could have been prosecuted, would have been by their nature punishable by 6-30 years each, would have been by their, by law required to be mandatory consecutive sentences. He could have been looking at decades and decades and decades in prison. And the State in the agreement, the partial agreement that was reached, agreed not to proceed. *** And given the fact that he has received, you know, substantial breaks in terms of other charges not having been filed, the sentence that I'm going to impose in this case is going to be 30 years in the Department of Corrections, followed by a mandatory supervised release term of three to natural life."

¶ 99    The circuit court is charged with fashioning a sentence based upon the particular circumstances of the individual case, including the nature of the offense and the character of the defendant. *Fern*, 189 Ill. 2d at 55. Thus, the particular circumstances of the case are not limited to the nature of the charged offense, but also includes the defendant's character. *People v. Johnson*, 2021 IL App (4th) 190446-U, ¶ 120. Proof of prior misconduct not resulting in prosecution or conviction is admissible as relevant to the question of a defendant's character. *People v. Johnson*, 114 Ill. 2d 170, 205 (1986). The evidence of prior misconduct merely has to be relevant and reliable, and it is for the circuit court to decide, in its discretion, whether the evidence meets that standard. *Id.* Hearsay evidence is admissible at sentencing. *People v. Pickens*, 274 Ill. App. 3d 226, 233 (1995).

¶ 100   The defendant objects to the circuit court mentioning that the State dismissed a juvenile petition. The defendant argues that there is nothing in the record to support the idea that the State had the ability to prove the juvenile petition. We cannot agree.

34

¶ 101   While the defendant is correct that the victim in the juvenile petition was a minor who did not attend any court hearings or provide a victim impact statement, the record is replete with evidence relating to charges that could have been brought against the defendant for acts committed against S.S. This evidence was in large part provided by the defendant. The victim in the juvenile petition, S.S., was interviewed at the Child Advocacy Center in Springfield, Illinois. While she disclosed that the defendant had touched her by sliding his hand up her thigh while she slept, she denied him touching her vaginal area or anywhere else. The defendant's PSI included a criminal history showing that the State had dismissed a juvenile case alleging aggravated criminal sexual assault by use of force against a victim between 9 and 13 years of age, a Class X felony. The defendant made no corrections at his sentencing hearing to the PSI and did not object to the court considering anything contained within the PSI. The PSI included a summary of an interview with the defendant in which the defendant admitted to numerous sexual assaults against S.S., including forcing S.S. to perform oral sex on him over 50 times. The PSI also included a police report that summarized an interview with the defendant which occurred on December 8, 2014, in which he again admitted to numerous sexual acts perpetrated against S.S. The defendant testified at his sentencing hearing on direct examination and admitted to telling police that he had touched or otherwise attempted to touch or have intercourse with S.S., "sixty, seventy, eighty" times. He then testified that he actually penetrated her two to three times. As such, there was sufficient evidence for the circuit court to reasonably determine that the State had the ability to prove the juvenile petition.

¶ 102   The defendant next argues that the circuit court erred in considering the "breaks" that the defendant received when the State agreed, as part of the plea agreement, not to file additional charges against him. The defendant argues that there was no other evidence that the defendant committed any uncharged offenses other than the defendant's own statements, which were

inconsistent with each other. The defendant argues that these statements were unreliable and not corroborated.

¶ 103   We find no abuse of discretion in the circuit court's consideration of the defendant's prior statements and his own testimony at his sentencing hearing based on reliability. We note that the bulk of the State's evidence of other offenses came from the defendant himself. Under Illinois Rule of Evidence 801(d)(2)(A) (eff. Jan. 1, 2011), "the party's own statement, in either an individual or representative capacity" is not hearsay. Rather, such statements are substantively admissible at trial. *People v. Denson*, 2013 IL App (2d) 110652, ¶ 5. Moreover, the defendant testified and was subject to cross-examination at his sentencing hearing, freely presenting evidence to the circuit court admitting to touching or otherwise attempting to touch or have intercourse with S.S. between two to four times. The defendant then testified that he sexually abused S.M. seven to eight times. The defendant's statements were corroborated by the victims' disclosures, as they corroborated some of the acts, the timeframe, the sexually inappropriate behavior of the defendant, and the defendant's access to both victims. The defendant disclosed his sexual desires relating to both victims and his motivation in committing sexual offenses against them, to feel more powerful.

¶ 104   The circuit court, in discussing the evidence, noted that "even if we just listened to [the defendant] and believe everything he said, we are talking about ten plus additional charges." The circuit court credited the veracity of the criminal conduct to which the defendant admitted at sentencing and considered the fact that the defendant committed an array of violent sex offenses for which the defendant's sentence could have been much longer had those crimes been charged and proven. The circuit court's imposition of the maximum sentence was premised on the multiplicity of the defendant's criminal conduct, a valid consideration for the circuit court at sentencing.

¶ 105   After arguing that the evidence of other crimes was insufficient and unreliable for purposes of sentencing, the defendant argues that he was not sentenced on the basis of the uncharged crimes, but rather on the fact that those uncharged crimes, if charged, would have resulted in a much greater sentence. The defendant claims that such consideration is improper as a factor in aggravation. The defendant has cited no authority for this proposition in his opening brief; however, in his reply brief, he cites *People v. Hill*, 14 Ill. App. 3d 20, 23 (1973).

¶ 106   The defendant cites *Hill* for the proposition that this court's own precedent prohibits consideration of uncharged offenses in determining a sentence. The defendant incorrectly interprets our holding in *Hill*. In *Hill*, the circuit court commented at sentencing on the fact that the defendant could have been charged with a felony rather than a misdemeanor, and this court remanded for resentencing, holding: "Since he was not charged with, nor proven guilty of committing a felony, it would be improper to use this as a basis for either denying probation or setting defendant's sentence." *Id.* The felony in question was the same conduct for which the defendant in *Hill* was charged and convicted.

¶ 107   In *People v. Kahl*, 63 Ill. App. 3d 703 (1978), this court distinguished *Hill*. In *Kahl*, this court commented that the possibility in *Hill* that the defendant might have been charged with a felony had no bearing on whether he would commit another offense or on whether the sentence received would foster rehabilitation. *Id.* at 709. This court went on to distinguish *Hill*, holding that the evidence in *Kahl* of prior convictions was relevant to the issues of the possibility of the defendant's recidivism and rehabilitative potential. *Id.*; see also *People v. Gooch*, 2014 IL App (5th) 120161, ¶ 9 (Where this court, in affirming sentence as not excessive, considered the fact that if defendant had pled to two dismissed counts of predatory criminal sexual assault it would have added 12 to 120 years to his sentence. Considering the sentence was within statutory limits and the two dismissed charges, the circuit court's sentence was appropriate.).

¶ 108   Similarly, in the case at bar, the evidence of other crimes was highly relevant. The other acts occurred over a six-year period just prior to the matter charged and were relevant to the defendant's character, the likelihood that the defendant would sexually reoffend, and the sentence that would be required for rehabilitation.

¶ 109   Next, the defendant argues that the circuit court failed to consider the financial impact of the defendant's incarceration on the IDOC. Section 5-4-1(a)(3) of the Unified Code (730 ILCS 5/5-4-1(a)(3) (West 2018)) states that, at a sentencing hearing, the sentencing court shall consider the financial impact statement filed with the clerk of the court by the Department of Corrections. Section 5-4-1(a)(3) requires the trial court to consider the financial impact of the defendant's incarceration based on the financial impact statement. *Id.*

¶ 110   As with the defendant's deterrence argument above, the defendant failed to raise this issue in the lower court as required by section 5-4.5-50(d) of the Unified Code. Therefore, the issue is forfeited.

¶ 111   Finally, the defendant argues that the circuit court failed to consider a number of nonstatutory factors in mitigation. These include (1) the fact of the defendant's guilty plea, (2) the defendant's youth and rehabilitative potential, and (3) the defendant's difficult childhood.

¶ 112   Each of these factors was known to the circuit court from the PSI report and evidence gleaned at the sentencing hearing. We presume, in absence of evidence to the contrary, that the sentencing court considers mitigation evidence when it is presented. *People v. Burton*, 184 Ill. 2d 1, 34 (1998). Here, that presumption was not overcome where the record contains no explicit evidence that these mitigating factors were not considered by the court. The circuit court is not required to detail precisely for the record the exact process by which it determined the penalty, nor is it required to articulate consideration of mitigating factors. *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002).

¶ 113   While a court may grant dispositional concessions to defendants who enter a guilty plea when the public's interest in the effective administration of justice would be served (*People v. Sivels*, 60 Ill. 2d 102, 105 (1975)), a sentence that is the maximum sentence within the sentencing range is not precluded when a defendant has pleaded guilty.

¶ 114   Further, the circuit court specifically mentioned during its sentencing pronouncement the defendant's youth, the defendant's childhood difficulties, and its opinion on the defendant's rehabilitative potential. As such, the record in this matter demonstrates that the circuit court did not fail to consider these factors.

¶ 115   The defendant was convicted of aggravated criminal sexual assault and sentenced to 30 years in IDOC. Where a sentence imposed is within the statutory range, it will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *Fern*, 189 Ill. 2d at 54. After reviewing the record, we conclude that the defendant has not demonstrated that the sentencing court failed to give the proper weight to mitigating evidence in rendering the sentence. The existence of mitigating factors does not require the circuit court to reduce a sentence from the maximum allowed. *People v. Pippen*, 324 Ill. App. 3d 649, 651 (2001). The defendant's 30-year sentence for these offenses did not constitute an abuse of the circuit court's discretion.

¶ 116                                        III. Conclusion

¶ 117   For the above reasons, we affirm the judgment of the circuit court of Christian County.


¶ 118   Affirmed.